## McGOUGH v. HOPKINS.

FRAUD—VENDOR AND PURCHASER—PRICE.

> It was fraud for the holder of an option on real property to represent to a prospective purchaser that he had an option on the property for $2,500, at which price he would sell, when in fact the option fixed the purchase price at $2,000: the purchaser was entitled to the property at the price plaintiff was to pay, and the court should have directed a verdict for defendant, in an action for the $500 excess remaining unpaid on the price.

Error to Grand Traverse; Mayne, J.  Submitted June 10, 1912.  (Docket No. 57.)  Decided November 8, 1912.

Assumpsit by Joseph H. McGough against James Hopkins for an alleged balance due for the purchase price of certain lands.  Judgment for plaintiff.  Defendant brings error.  Reversed; new trial denied.

*John W. Patchin*, for appellant.

*Covell & Cross*, for appellee.

BROOKE, J.  This action is in assumpsit; the plaintiff filing the following bill of particulars:

"1911, April 21, $500, balance due on sale of real estate, to wit:  Lots 35, 36, 39, 40, and 43 of Hannah & Lay Company's 11th addition to the village, now city, of Traverse City, from the plaintiff to the defendant, at his request."

The plea was the general issue.  The circumstances giving rise to this action are somewhat unusual.  The parties had been business acquaintances for many years; the plaintiff being engaged in the business of selling coal, hay, and feed in the city of Traverse City, and the defendant being likewise engaged in business in said city.  One Mrs. Larkins was the owner of the lands described in the plaintiff's bill of particulars at the time relations arose with reference thereto between the parties.  Prior to negotiating with the defendant, the plaintiff seems to have written Mrs. Larkins with reference to the property, and received from her the following letters:

"GRAND HAVEN, January 27, 1911.
"Mr. McGough.
"*Dear Sir:*
"Your letter regarding property received.  Will not dispose of it to any one else before March 1, and cannot give possession to any one until May 1, as the C. B. Taylor Coal Co. don't relinquish possession until that time.

"I will accept two thousand dollars for the three lots with the alley and coal sheds, and if it will make it more convenient for you, you can pay $500 down and I will take a mortgage upon the property for the balance. Interest at six per cent. and you can name your own time. You make the payments anywhere from one to ten years. You can make the payments in three $500 payments. I wouldn't wish to accept less at one time, as it doesn't seem to amount to anything if invested in smaller amounts. If mortgage is given, shall require that the building be kept insured for amount sufficient to cover indebtedness which amount in case of fire shall be turned over to me to discharge the mortgage. If you desire the papers to be made out before April 15th, you can notify me and I will come home; otherwise we shall not return before that time.

"Respectfully,
"Mrs. J. M. LARKINS."

"GRAND HAVEN, Jan. 31, 1911.

"Mr. McGOUGH.
"*Dear Sir:*
"Yours received. Yes, the three lots includes all of the property north from the alley extending as far north as the oil works and the coal sheds, except the portion that the C. B. Taylor Coal Co. have added since in their possession, and which, according to the contract, they have the right to remove, are included in said property. The sheds, as you undoubtedly know, are partly on the P. M. R. R. property.

"I will be at home about the middle of April and will then make out the papers. The delay will give you more time to make arrangements for the first payment which I feel should be five hundred dollars, after that, as long as the interest is promptly paid, you can take your own time to pay the principal.

"Respectfully,
"Mrs. LARKINS."

"February 2, 1911.

"J. H. McGOUGH.
"In reading your letter, I made a mistake in reading undoubtedly because I read it without my glasses. I read it one hundred where you had written one thousand. Your proposition as stated is more than satisfactory and

will make out the papers for the same as soon as we return home, and, after the first payment, you can have as much time as you desire for the balance.

"Respectfully,

"Mrs. Larkins."

Plaintiff testified that these three letters constituted an option to him from Mrs. Larkins. After he had secured this so-called option, he entered into negotiations with defendant, in which he offered to sell the property in question to the defendant for $2,500. The defendant knew the property did not belong to the plaintiff, but did belong to Mrs. Larkins. He agreed to take the property at the sum of $2,500, paying $1,000 down and the balance in three notes of $500 each, due two, three, and four years after date. Upon Mrs. Larkins' return, the plaintiff instructed her attorney to prepare the deed directly from her to the defendant, which was done; the plaintiff paying the $500 cash payment to Mrs. Larkins' attorney. After this was done, he saw the defendant and instructed him to go to the lawyer's office and get his deed, sign the three notes, and to leave $1,000 in the bank for him, to all of which he testifies the defendant agreed. On arriving at the lawyer's office, the defendant learned for the first time that the purchase price of the property from Mrs. Larkins was $2,000, instead of $2,500; whereupon he signed the notes and took away his deed, but did not deposit the $1,000 in the bank, as he had agreed with the plaintiff. After some talk between the parties, defendant did pay and plaintiff accepted $500, the amount which plaintiff had paid on account of the purchase price to Mrs. Larkins, and thereafter plaintiff brought this suit to recover the other $500.

On cross-examination plaintiff testified:

"*Q.* Now, you agreed with Mr. Hopkins, didn't you, in your talk—the first talk you had with him—that you didn't want that property, and that you would let him have it at the same price that you were to pay for it, isn't that true, Mr. McGough?

"*A.* I told Mr. Hopkins I would sell him the property

for $2,500, and that that was what it cost me. That is what I told him, when, as a matter of fact, I had an option on it for $2,000.

"*Q.* And you led him to believe that you were paying $2,500 for it?

"*A.* That's what I told him.

"*Q.* Well now that wasn't true, was it, Mr. McGough?

"*A.* What I am telling you now is true, but I did not pay $2,500 for it; that wasn't so. I did tell Mr. Hopkins that $2,500 was what it cost me. I never gave him to understand anything different. I calculated to make $500 out of the deal.

"*Q.* You knew the first time you talked with Mr. Hopkins that you would get the property for $2,000 by paying $500 down?

"*A.* I had an option on the property before I ever said a word to Mr. Hopkins about it."

Plaintiff further testified that he never had any conversation with defendant about a commission or an agreement with him for a commission, but considered the $500 as a commission on the deal. Defendant testified, and this is not denied by plaintiff, that plaintiff told him that "he was afraid Mrs. Larkins would flunk out of the deal," and for that reason he wrote his own check for the first $1,000; whereas, as a matter of fact, he gave his check for $500 only. Defendant further testified that after the difficulty had arisen he paid the $500 to the plaintiff in settlement, with the understanding between them that it should be accepted in full settlement of plaintiff's claim. This was denied by plaintiff. In submitting the case to the jury, the court instructed the jury that the plaintiff was entitled to recover, unless the jury should determine from the evidence that the plaintiff was acting throughout the transaction in the capacity of defendant's agent, in which event the plaintiff could not recover. He further instructed the jury that the plaintiff would have the same right to recover as against the defendant as though he had had a deed from Mrs. Larkins; the evidence showing that she had made a proposition to sell the property in question to him, and that he had accepted such proposition.

We are of opinion that upon the facts disclosed these instructions were erroneous. Plaintiff never actually possessed the title to the property, and confessedly agreed that defendant should pay only the amount demanded by the owner, Mrs. Larkins. That amount defendant has already paid.

In *Hokanson* v. *Oatman*, 165 Mich. 512 (131 N. W. 111, 35 L. R. A. [N. S.] 423), we held that, where a broker fraudulently misrepresented that the owner's price was $1,200, where in fact it was but $900, the purchaser could recover the difference in an action in assumpsit for fraud and deceit. See, also, *Strachan* v. *Meyering*, 168 Mich. 253 (134 N. W. 11).

While, technically, it may be said that plaintiff was not acting as a broker representing either party, we think the record clearly establishes the fact that in the transaction both he and defendant dealt with the property as belonging to Mrs. Larkins during the negotiations. Under these circumstances the plaintiff should be held to be bound by his representations of facts within his own knowledge and unknown to defendant. A verdict should have been directed in favor of defendant.

The judgment is reversed and no new trial will be granted.

Moore, C. J., and Steere, McAlvay, Stone, Ostrander, and Bird, JJ., concurred.