EDWARD P. BRETT *vs.* JOHN T. COONEY ET AL.

RICHARD B. LYON ET AL. *vs.* JOHN T. COONEY ET AL.

Third Judicial District, Bridgeport, October Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The right of the owner of property to dispose of it as he pleases is an incident of ownership. If deprived of that right by a fraudulent conspiracy, equity will afford relief, although he may have sustained no direct pecuniary loss.

What honor and good faith require a man to ask of a court of equity, for the profit of others, will not be refused without strong cause.

The plaintiffs, with other owners of real estate in a residential neighborhood, understood and recognized that their common interests required the exclusion of personally undesirable or objectionable tenants, and the keeping of their respective premises from business uses or other purposes which might render the locality less attractive for private residences. The defendants, who were aware of this neighborhood understanding, and that *C*, who desired to purchase the property for use as a boarding-house, was an objectionable person to the plaintiffs, agreed between themselves to obtain the property by falsely pretending that it was desired as a private residence for the partner of one of them, who was a desirable neighbor; and by means of this fraud gained an apparent title which was immediately conveyed to *C*. *Held* that a court of equity had power to restore the parties to their original position, by set-

Brett *v.* Cooney et al.

ting aside, as void, the deed or deeds so obtained, and compelling a reconveyance of the paper title acquired under them.

Argued October 30th—decided December 5th, 1902.

ACTION for an injunction and a judgment declaring certain deeds to be void and ordering a reconveyance; brought to the Superior Court for New Haven County and tried to the court, *Case, J.* Judgment for plaintiffs and appeal by defendants. *No error.*

The following facts were specially found: The plaintiffs owned summer residences on Beach Street, which skirts the shore of Long Island Sound near Savin Rock in West Haven, and on a part of the street which was largely given over to such residences. The residents in the neighborhood were well known to each other. It was well understood and recognized by them all, including the plaintiffs, that their common neighborhood interest required the exclusion of personally undesirable or objectionable tenants, and keeping their properties from uses for business or other purposes which might make the locality less attractive for private residences; and they have been controlled by this understanding in the management of their properties; but there was no binding agreement to that effect. One of the defendants, Mrs. Cooney, kept a boarding-house in New Haven, and had long wanted to buy the plaintiffs' residence to use as a boarding-house. She and the other defendants well knew the foregoing facts, and that the plaintiffs and their neighbors considered her personally and her husband undesirable and objectionable as tenants or purchasers, and the opening of a boarding-house there as objectionable. She had tried without success to purchase the property from the plaintiffs, by methods intended to deceive them as to who the intending purchaser was. They would not sell to her, and she knew it. Thereupon she and her husband combined with Joseph R. Manning, a real-estate broker, and James B. Martin, an attorney at law, to secure the property for her by misrepresentation and deceit, her sole purpose being to use it for a boarding-house. In pursuance of this combination, Manning opened negotiations with the

plaintiffs, falsely stating that he was acting for one Coyle, an attorney at law in New Haven, who wanted the property for his private residence. Martin and Coyle were partners. Coyle was personally unobjectionable, and the plaintiffs agreed to sell to him for a price to which Manning agreed, and which was the fair value of the property. Coyle was then in the South, had no intention of buying the property, and was no party to the fraud. At Manning's request, the plaintiffs went to Martin's office to execute the deeds. There Manning told them, in Martin's presence, that since Coyle was in the South, they might make the conveyance to his partner, Martin, and that Martin, on Coyle's return, would convey to him. Acting on this representation, they conveyed the property to Martin by an absolute warranty deed in the usual form, and received the agreed price. The money for this payment was in fact furnished by Mrs. Cooney, and on the same day Martin conveyed the property to her, and both conveyances were put on record.

She and her husband were undesirable and objectionable persons to control the property in question, judged by the standards and needs of that locality, and a boarding-house in that place and under that control would be an undesirable and objectionable addition to the locality.

As soon as the plaintiffs learned of the deceit which had been practiced upon them, they tendered the purchase money, with interest, to Mrs. Cooney, and requested a conveyance, which was refused.

*James H. Webb* and *Arnon A. Alling*, for the appellants (defendants).

*Henry G. Newton* and *Ward Church*, for the appellees (plaintiffs).

BALDWIN, J. The plaintiffs in each of the cases at bar (which will be treated as one in this opinion), conveyed a house to Martin, in pursuance of what they supposed to be a contract between them and his law partner, Coyle, for its sale

to Coyle for his personal residence.  Coyle, in fact, had made no such contract; but they had been induced to believe that he had, and that a conveyance to Martin would serve to execute it, by the fraudulent misrepresentations of the defendants, who had combined to get, in this way, the title in Martin, in order that he might convey, not to Coyle, but to Mrs. Cooney.

It follows that the plaintiffs never agreed to sell their property to any one.  The legal title to it has become vested in Mrs. Cooney, through a conveyance to Martin, her grantor, which the plaintiffs voluntarily made on receipt of its fair value.  That conveyance purports to be an executed contract between them and Martin.  In fact, however, it was procured by a fraudulent misrepresentation to which he was a party.  Equity uncovers such frauds and, when they are exposed, has power to supply a remedy.

The *jus disponendi* is an incident of the ownership of property.  The plaintiffs had the right to dispose of their house to whom they would.  The defendants fraudulently combined to deprive them of this right, and equity will not suffer them to retain the fruits of their deceitful trickery.

It is contended that the plaintiffs have sustained no damage, and that fraud without damage is insufficient to support an action.  It is true that they have received the fair value of their house, and that to turn it into a boarding-house can bring them no direct pecuniary loss, since they own no other property in the vicinity.  But they received this value from one who induced them to accept it by a fraud; whom they supposed to be the agent of another; and to whom they conveyed merely as a mode of passing the title to the latter.  Their *jus disponendi* has been directly invaded by his share in the transaction, procured or consented to by the other defendants.  The violation of a legal right imports damage. *Watson* v. *New Milford Water Co.*, 71 Conn. 442, 451.  The law implies it, even though, in fact, the defendant's breach of duty proved a benefit to the plaintiff. *Excelsior Needle Co.* v. *Smith*, 61 Conn. 56, 65.

Fraudulent representations constitute no ground for equi-

table relief unless made to one who was induced by them to act to his injury. *Barnes* v. *Starr*, 64 Conn. 136, 150. But in measuring injury, equity does not concern itself merely with money losses. If it finds that a clear right has been invaded, and that redress can be secured by putting the parties back in their original position, it will seldom refuse its aid because the plaintiff can show no substantial damage to his pecuniary interests. The oral understanding between the neighbors on Beach Street, that they would not sell for such a purpose as that for which Mrs. Cooney sought title, would have furnished no ground for an action by any one against the plaintiffs, had they knowingly sold to her. But it put them under an honorary obligation which may be properly taken into account in determining whether a case has been made out for equitable relief. The only persons who would suffer a substantial pecuniary loss, were these deeds allowed to stand, would be those owning residences in the neighborhood of the property conveyed. They, however, could maintain no action against the defendants. Unless the plaintiffs can sue, no one can. Good faith and honorable feeling between man and man called upon them, therefore, to endeavor to retrace the steps which they had unwittingly taken to their neighbors' prejudice. They may be regarded, in a certain sense, as occupying a fiduciary relation as to their right of action, and the damage to others may be considered as bearing on their own equity to relief. They stand in this respect in no worse position than if they had insisted on the insertion, in the *habendum* clause of the deed to Martin, of a limitation to the use of Coyle. In that case they would have suffered no greater damage, had Martin conveyed to Mrs. Cooney. In that case, the neighbors could only have gained protection against pecuniary loss through some action like this. The plaintiffs are not trustees of their interests. They were under no legal duty, and perhaps under no equitable duty to sue for their protection. But since they have sued, they are entitled to claim the benefit of that favorable regard which naturally attaches to acts done from a just sense of moral obligation. What honor and good faith re-

quire a man to ask of a court of equity, for the profit of others, will not be refused without strong cause.

The judgment properly declared both deeds under which Mrs. Cooney claims title to be void, and ordered the paper title held under them to be reconveyed. The deed from the plaintiffs to Martin they could avoid, since it rested on no contract of sale, and was given because they were deceived into believing that there was such a contract between them and Coyle, of which it was a proper execution. That from Martin to Mrs. Cooney they were entitled to have set aside, because it was given in pursuance of a fraudulent conspiracy in prejudice of their right to dispose of their property according to their own will and their own sense of neighborly obligation.

There is no error in either case.

In this opinion the other judges concurred.