## NANCE v. McCLELLAN et al.
### No. 11037.

Court of Civil Appeals of Texas. Dallas.
Oct. 29, 1932.

Rehearing Denied Dec. 10, 1932.

· Wynne & Wynne, of Wills Point, for appellant.

Burgess, Burgess, Chrestman & Brundidge and H. A. Bateman, all of Dallas, for appellees.

VAUGHAN, J.

This suit was originally instituted in the court below by Helen White and Ollie Parker, femes sole; thereafter, and before trial, Helen White married one R. P. McClellan; and the plaintiff's third amended original petition, upon which trial was had, named Mrs. Helen McClellan, joined pro forma by her husband, R. P. McClellan, and Ollie Parker, a feme sole, as plaintiffs, and E. T. Nance, State National Bank of Grand Saline, Tex., and the Texas & Pacific Railway Company as defendants. The parties to this appeal whose interest is actually involved are Mrs. Helen McClellan and Ollie Parker, as appellees, and E. T. Nance, appellant, and the use of the terms "appellant" and "appellees" will refer to said parties as above stated. Appellees, as plaintiffs in the court below, alleged that on or about October 18, 1929, appellant was the owner of a certain tract of land being a lot 50 feet by 100 feet in the town of Grand Saline, Tex., that as an inducement to a sale, represented verbally to said R. P. McClellan that the property immediately in front of and adjoining the lot in question was a public street, approximately 50 feet in width and connecting with Main street in the town of Grand Saline, and lying between the involved lot and the right of way of the Texas & Pacific Railway Company; that, relying upon such representations, said McClellan purchased from appellant an option to buy said lot, paying the sum of $500 therefor, the total purchase price of the lot being $3,000; that on or about October 26, 1929, the appellees (Mrs. Helen McClellan then a feme sole) being interested in the purchase of said lot and the taking over of said option from McClellan for their use and benefit, went to Grand Saline, where appellant repeated and made to them the same representations, namely, that there was a public street in front of said lot to the north and adjoining the lot, and, relying thereon, purchased the option agreement from R. P. McClellan for the sum of $500, and entered into a purchase agreement with appellant, whereby they, appellees, agreed to pay the further sum of $1,050 in cash, execute a note for $1,450 payable to the order of appellant, and execute a deed of trust to secure said note; that, in accordance with said contract, the deeds of conveyance, together with appellees' $1,050 cash, the note for $1,450, and the deed of trust securing same, were, after said deeds had been properly executed, all placed in escrow with the defendant State National Bank of Grand Saline, Tex. Appellees further alleged that, before purchasing said option and entering into the contract for the purchase of said lot with appellant, they informed him that they desired to purchase the lot for the purpose of erecting a hotel thereon, and that the property as a hotel site would be valueless unless there was ingress and egress to the same, and unless the same fronted upon a public street or thoroughfare; that the property north of the lot, which appellant represented to be a public street, was the property of the Texas & Pacific Railway Company; that said lot was entirely without ingress or egress and consequently wholly worthless for the purpose of a hotel site and wholly valueless to appellees; that the representations of appellant were fraudulently made to induce appellees to part with their money and to agree to purchase said property, which they would not have done but for such representations; that appellees, Helen McClellan and Ollie Parker, contributed equally in making the payments alleged; that they discovered the fraud on or about November 19, 1929, and immediately gave notice to appellant of their rescission of said trade and transaction had in reference to said lot, and demanded the return of their money and the cancellation of the note and deed of trust executed by them. Appellees further alleged that appellant had pleaded that the property immediately north of the lot in question had been acquired by the town of Grand Saline for the public as a roadway by prescription; wherefore they made the Texas & Pacific Railway Company, the record owner of such property, a party defendant, and prayed that, if the court should find that the public had acquired a right to said property as a public thoroughfare by prescription, such finding and judgment should be binding on the Texas & Pacific Railway Company, and, in addition thereto, prayed that they have judgment against the State National Bank of Grand Saline, Tex., for the sum of $1,050 placed in its hands by appel-

lees, against appellant for an additional sum of $500, with interest on the sum of $1,550 at 6 per cent. per annum from October 29, 1929, and that the note for $1,450 and deed of trust be canceled.

Appellant answered by general demurrer, general denial, and special answer to the effect that he made no representations to appellees at all; that they came to the town of Grand Saline, and, after investigating the property themselves, sought him out to purchase same; that there was a street in front of the lot in question and the street had been opened, used, and enjoyed for more than 40 years by the citizens of the town of Grand Saline, and that, if the street had been closed, it was not caused by, agreed to, nor acquiesced in by appellant; that he did not represent the same to be a street, as it was opened, used, and occupied as a street by the entire citizenship of Grand Saline and Van Zandt county; that appellees did not purchase any option agreement from R. P. McClellan, but that said agreement was purchased by appellees originally, but, by request, was taken in the name of R. P. McClellan. Appellant further alleged that he had in all things carried out the contract to its full terms and conditions, and, by way of cross-action, prayed for judgment against said appellees and the State National Bank of Grand Saline, Tex., for the money, the note, and deed of trust which said bank held in escrow.

The State National Bank of Grand Saline answered by general demurrer, general denial, and that it had no interest in the subject-matter of the suit, and prayed that it be discharged with its costs. The Texas & Pacific Railway Company answered by filing a misjoinder of causes of action, a misjoinder of parties, a general demurrer, and general denial.

The cause was tried to a jury, which found, in answering special issues (1) that appellant represented to R. P. McClellan, prior to the purchase of the option by McClellan, that there was a public street between the lot in question and the Texas & Pacific Railway Company's right of way; (2) that R. P. McClellan repeated such representations to appellees prior to their purchase of the option from him; (3) that appellees relied upon such representations of appellant in agreeing to purchase the lot in question; (4) that appellant represented to the appellees, prior to the time they placed the cash, note, and deed of trust in the possession of the State National Bank of Grand Saline, that there was a public street between the lot in question and the right of way of the Texas & Pacific Railway Company; and (5) that appellees relied upon such representations in agreeing to purchase the lot in question. On February 5, 1931, the court below rendered judgment in favor of appellees against appellant and State National Bank of Grand Saline, Tex., for the

sum of $1,050, and against appellant for the additional sum of $500, with interest on the sum of $1,550 from date of judgment at the rate of 6 per cent. per annum, and all costs, and canceling and holding for naught the deed of trust and the note for $1,450.

The trial judge made the following findings which he combined with the findings of the jury in rendering the judgment appealed from, viz.: "(a) That, on the undisputed evidence in the record, there was not a public street in front of the lot in controversy and between said lot and the right-of-way of The Texas and Pacific Railway Company, at or since the time of the negotiations between the plaintiffs and the defendant, E. T. Nance, and that, therefore, the representations of the defendant, E. T. Nance, as found by the Jury, to the effect that at the time of said negotiations there was a public street between said lot and the Texas and Pacific Railway Company's right-of-way, were false; and that the motion of said plaintiffs for judgment should be and it is hereby in all things sustained. (b) Came on for hearing the motion of the defendant, E. T. Nance, for judgment in his favor, and the court having heard said motion and argument of counsel thereon, and the jury having found that said defendant did make the representations complained of by plaintiffs, and that plaintiffs relied thereon, and the court having found from the undisputed evidence that said representations were false, the court is of the opinion that the motion of said defendant for judgment is not well taken, and the same is hereby in all things overruled. (c) The court finds that there is no evidence in the record entitling plaintiffs to any injunctive or other relief against the defendant, The Texas and Pacific Railway Company, and that said defendant is entitled on the evidence to go hence without day and recover its costs."

We have carefully reviewed the statement of facts and reached the conclusion that the findings of the jury are amply supported by evidence, and further, that the independent finding of facts by the trial judge was made upon evidence without conflict of any material import, therefore, all of said findings are adopted as part of the material findings of fact by this court.

 Appellant urges, as material fundamental error, the failure of appellees to join in this suit Emma Nance, the wife, Charlie Nance, the son, and Bettie Nance, the daughter-in-law, of appellant, as defendants. In support of his position, appellant contends that this cause was essentially one to cancel the deeds executed by appellant, his wife Emma Nance, Charlie Nance and wife, Bettie Nance, as well as to cancel the vendors' lien note given as a part of the purchase price, for the involved lot, the deed of trust executed to secure same, and to recover the part of the purchase money paid on the consideration

for said lot. Appellees alleged in their petition on which trial was had that "on or about the 18th day of October, 1929, the defendant, E. T. Nance, was the owner of certain property situated in the town of Grand Saline," etc., describing the lot in question. Appellant alleged in his answer on which he went to trial "that he was the owner of the property described in plaintiffs' petition and that he sold the same to the plaintiffs, made the contract and the deeds * * * as suggested and requested by the plaintiffs, at and for an agreed consideration." On the trial of the cause, appellant testified as follows in reference to his acquisition and ownership of the involved lot: "I bought the property from Mrs. Elizabeth Ridgell, my wife was dead at that time, and I have since married my present wife, whose name is Emma, having married her after I purchased this property, and I didn't receive a deed from anybody else to this property except Mrs. Ridgell. I think I bought it along in about 1902, about 29 or 30 years age." The vendors' lien note for $1,450, which appellees sought to cancel, was by its terms payable to the order of appellant alone; likewise the deed of trust sought to be canceled correctly described the note which it was given to secure as being payable solely to appellant or his order. The $1,050 in cash and the note for $1,450, part of the consideration contracted to be paid for said lot, and deed of trust securing said note, were placed in escrow with the State National Bank of Grand Saline to be held until the deeds conveying said lot to appellees should be executed and delivered by appellant, his wife Emma Nance, Charlie Nance and wife, Bettie Nance, to appellees. The fact that appellant contracted that said Emma Nance, Charlie Nance, and Bettie Nance should join him in the execution of said deeds did not create in them any interest in the property, but there only arose therefrom the implication that they had some interest in the involved lot. However, as revealed by the evidence, the actual title was vested in appellant and excluded the existence of any interest in the property resting in either Emma Nance, Charlie Nance, or Bettie Nance; therefore, we hold that said last-named persons were not necessary parties to this suit, as it was only necessary for appellees "to join as parties those interested in the contract at the time of suit." Houts v. Scharbauer, 46 Tex. Civ. App. 605, 103 S. W. 679; Texas Jurisprudence, vol. 7, p. 973. From this authority we quote: "Conversely, persons who have no interest, or have parted with their interest, need not be made parties. A person claiming under and in privity with one who is named as defendant need not be made a party to the suit for cancellation, since a judgment against the defendant binds such a person as effectually as if he had been made a party to the suit." "Conversely, a person is not a necessary party defendant who has no interest in the sub-ject matter or object of the action; and plaintiff is not required to make parties defendant to his suit so that some matter between defendants and such other parties about which he has no interest may be litigated." 47 C. J. p. 91. Furthermore the deeds of conveyance had never been delivered to and accepted by appellees, therefore, they were not in position to ask any relief from the court as to said deeds. Wherefore we hold that, under the facts of this case, appellees' suit was brought only to cancel the note and deed of trust and to recover that part of the purchase price that had been paid by them in cash, and that the seeking of this relief did not involve, as a part of appellees' cause of action, the cancellation of said undelivered and unaccepted deeds of conveyance; and that appellant's assignment of fundamental error is without merit.

■ Appellant presented a general demurrer to appellees' third amended original petition on the ground that same did not allege any measure of damages, and he complains because same was overruled. Appellees alleged: "That when plaintiffs purchased said option from the said McClellan and when they paid to him the said sum of $500.00 and when they deposited the further sum of $1,050.00 with defendant, State National Bank of Grand Saline, Texas, and when they executed said note and deed of trust, they did so, wholly relying upon the verbal representations of the said E. T. Nance made by him to them immediately preceding their doing of said acts, and relying particularly upon his statement to them that said property faced upon a public street and that said street connected with Main Street in the City of Grand Saline, and but for said representations they would not have considered agreeing to purchase said property and would not have paid out said money and would not have executed said deed of trust and note because, as stated by them to defendant, Nance, they desired to use said property as the site for a hotel and because said property as a hotel site was worthless and valueless unless there was ingress and egress to same and unless the same fronted upon a public street or thoroughfare. That all of said representations of material facts so made by the defendant, E. T. Nance, to the said McClellan and to plaintiffs were false and untrue. That said property does not front upon any public street; in fact, same does not in any way front upon, face upon, connect with or adjoin any character of public street, and that said property north of said 50x100 ft. tract and represented by defendant, Nance, to be a public street is the property of defendant, The Texas and Pacific Railway Company, and is not a public street and was not a public street on the dates in question but is privately owned property. That said 50x100 ft. tract is entirely without ingress or egress over any public street or thoroughfare and is

entirely enclosed and surrounded by privately owned property and is wholly worthless and valueless for the purpose of a hotel site, and is wholly worthless and valueless to these plaintiffs." And further alleged that upon discovery of the fraud they immediately gave notice of rescission and prayed for money judgment only in the sum of the cash paid out by them, and the cancellation of their note and deed of trust. Said petition contained no prayer for any other pecuniary damages on account of the alleged fraud. We think the following pronouncement by our Supreme Court in Kanaman v. Hubbard, 110 Tex. 560, 222 S. W. 151, 152, should rule the question thus presented, viz.: "It is therefore unnecessary for us to determine whether a court of equity would not order a rescission for fraud in the absence of a showing of actual pecuniary loss, for, were the necessity recognized for the showing of such loss to warrant the relief of rescission in equity, certainly any appreciable prejudice, though slight in amount, would be sufficient." In J. I. Case Threshing Machine Co. v. Webb (Tex. Civ. App.) 181 S. W. 853, 855 (error refused), the defendant, who was sued on a purchase-money note given for an automobile, sought to rescind the contract because of false and fraudulent representations inducing the contract. He made no showing whatever that the automobile was worth less than he agreed to pay for it; and it was held: "It is elementary that fraud, in order to be the basis for the recovery of damages, must have resulted in pecuniary injury to the party complaining; but this rule applies generally to only those cases where the injured party is seeking to recover damages from the wrongdoer as indemnity against the injury which he has sustained by reason of the fraud, and has no just application to a case like the present, where the fraud is relied upon as a defense to the enforcement of an executory contract. In cases such as this, if the false representations relate to a material fact, the law implies that the defrauded party has suffered an injury sufficient to defeat a recovery. Kanaman v. Hubbard [Tex. Civ. App.] 160 S. W. 304; Stewart v. Lester, 49 Hun, 58, 1 N. Y. S. 699; MacLaren v. Cochran, 44 Minn. 255, 46 N. W. 408; Smith v. Countryman, 30 N. Y. 655; Brett v. Cooncy, 75 Conn. 338, 53 A. 729, 1124; Harlow v. La Brum, 151 N. Y. 278, 45 N. E. 859." In the case of Loughry v. Cook (Tex. Civ. App.) 263 S. W. 333, 334, we find the following language used: "It is inconceivable that any man would buy a house and lot with no way to reach or get out of it." The evidence in the instant case clearly establishes the facts to be that, before signing the contract and putting up their money, note, and deed of trust, the appellees informed appellant they were considering buying the lot for the purpose of erecting a hotel thereon; that they asked in particular about the street in front of the lot; that appellant represented to them that it was a public, dedicated city street; that they would not have agreed to buy the lot except for their reliance upon such representations, and that the representations were false in that the so-called street or roadway was actually upon property owned by the Texas & Pacific Railway Company; and that those who used it as a roadway did so only by permission of the railway company, which had the right at any time to deny them the use thereof. The evidence further shows that there was no other means of ingress or egress to the lot. We can hardly imagine a case in which the equitable right to rescission could be more clearly established. See also the following authorities in support of the above holdings: Edmonds v. White (Tex. Civ. App.) 247 S. W. 585; Osborn v. Texas Pacific Coal & Oil Co. (Tex. Civ. App.) 229 S. W. 359.

The general rule that a party to be entitled to a rescission on account of fraudulent misrepresentations must make some showing of loss or injury on account thereof is not impaired by the holdings in the above authorities; nor the recognized proper application of same, as stated in the following authorities, in any respect materially restricted, viz.: Black on Rescission and Cancellation, § 567; Id. § 37: "In order to obtain a rescission of a contract, it is necessary for the complaining party to show that he has suffered actual loss or injury by reason of it, or that he is threatened with substantial loss or injury which will fall upon him if the contract is not annulled. But in the case of executory contracts, the rule does not mean that the party complaining should have sustained actual loss at the moment of rescinding or filing his bill for rescission, but it is enough to show that such will be the inevitable result if the contract is completed according to its terms. * * * If damage is shown, the extent of the injury occasioned by the fraud will not be inquired into in a suit to rescind the contract. And the injury need not be accurately measurable in money, but it is sufficient if it is of a pecuniary nature." In Pomeroy's Equity Jurisprudence, vol. 2, § 898, the rule is announced viz.: "If any pecuniary loss is shown to have resulted, the court will not inquire into the extent of the injury; it is sufficient if the party misled has been very slightly prejudiced, if the amount is at all appreciable." Said assignment is therefore overruled.

■■ Appellant, by his fourth assignment of error, contends that the trial court erred in permitting R. P. McClellan, Mrs. Helen McClellan, and Miss Ollie Parker to detail conversations had among themselves in Dallas, Tex., in the absence of appellant, repeating statements claimed to have been made by appellant to R. P. McClellan in reference to the location of the involved lot

and a street situated immediately in front of said lot and between the right of way of the Texas & Pacific Railway Company. The testimony so objected to we find to be as follows:

The witness McClellan testified: "In the meantime he (Nance) told me about the street being there, said it had been given to Grand Saline as a public street some time before by the T. & P. Railroad, and I asked him how far across and he pointed to a water trough about half-way between the T. & P. track and this property and said the street extended that far, and I asked him how far the T. & P. right-of-way (came) and he said it came to the line with the concrete watering trough which was to one side of this property, on the east side. Mrs. McClellan was with me on that trip and was present when this conversation took place. I don't know whether Mr. Morris was present then or not, he was in and out all the time. Mr. Nance represented a street there, I guess 90 to 100 feet wide."

Mrs. McClellan testified as follows: "I was down there with Mr. McClellan when he bought the option, and I heard Mr. Nance say it was a public street, and Miss Parker and I later bought the option from Mr. McClellan. Yes, I heard Mr. McClellan tell Miss Parker that it was a street, that Mr. Nance said it was a public street, that was when we bought the option that he told her that."

Ollie Parker testified as follows: "It was somewhere between the 18th and 25th of October, 1929, when I first heard about this lot down at Grand Saline. Miss White 'phoned me and I met her over at her home and Mr. McClellan came out after I had been there fifteen or twenty minutes. I was not interested in purchasing any property in Grand Saline until Miss White called me up, and in talking with her she said that Mr. Nance said there was a public street in front of the property, but he didn't think it would be paved and we wouldn't be out anything on paving, that it was a street given by the railroad to the city, that it was a good wide street and was a public street. After that conference I came with Mrs. McClellan down to Grand Saline, and Mr. Carmichael, a contractor whom we had spoken to about the building, and two other men came with us, and while we were on the lot looking at it, Mr. Nance and Mr. Morris came out there to see us. Mrs. McClellan introduced me to Mr. Nance and told him that she and I decided to buy the option from Mr. McClellan and put up a hotel, so Mr. Carmichael then asked Mr. Nance—told him that he wanted to look around the property, that he was the one who was going to loan us the money to put up the hotel, he was a contractor, and he walked around, and asked how wide this street was, if it was a public street, and Mr. Nance told him the street extended beyond that watering trough, the watering trough belonged to the city. I had about the same conversation with Mr. Nance that Mr. Carmichael did. I told him the street was muddy and looked like it was in pretty bad condition, and he said Mr. Morris was going to put a team on it in the next week or two, and I asked him the name of the street, and he said, 'The streets down here don't have any names.'"

This evidence was timely objected to by appellant on the ground that same was purely hearsay as to him. In the submission of the special issues, the trial court treated this testimony as having been offered, not for the purpose to prove that appellant made the representations as to there being a public street north of the involved lot to McClellan originally, neither that such representations were either true or false, but merely to prove that McClellan faithfully repeated to Ollie Parker what appellant said to him (McClellan) in reference to there being a public street furnishing means of ingress and egress to and from said lot on the north side thereof. In this respect, it is our opinion that said evidence was not hearsay, but direct evidence. Appellees, by other parts of their testimony, and that of other witnesses, established that appellant did actually make the misrepresentations to McClellan; that appellant later made the same misrepresentations to Mrs. McClellan and Miss Parker; that such representations were untrue; and that appellees relied thereon to their detriment. However, it was a part of appellees' case to show that such misrepresentations were made to appellees before they consummated their transaction with R. P. McClellan for the purchase of his option and the payment to him therefor the sum of $500. Although it was shown that appellee Mrs. McClellan was present with R. P. McClellan in Grand Saline when the first misrepresentations were made, nevertheless, it became necessary to show that the same misrepresentations were conveyed to appellee Ollie Parker. This was accomplished by the testimony of the persons who were present and heard the misrepresentations conveyed to Ollie Parker. The mere absence of appellant at the time of the conversation had between said three witnesses does not make their testimony in reference thereto hearsay; the appellees had the right to prove, and did prove, not by the testimony of one who said he had heard that R. P. McClellan repeated the representations to appellees, but by those who were present and heard such repetition.

We think the rule applicable to this situation is clearly stated in Wigmore on Evidence, vol. 3, pp. 770, 771: "The theory of the hearsay rule is that, when a human utterance is offered as evidence of the truth

of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extra-judicial utterance is offered, not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted, the hearsay rule does not apply. The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is not received, this is in no way due to the hearsay rule."

In 17 Texas Jurisprudence, p. 360, § 122, we find the following: "Evidence may be admissible for one purpose and inadmissible for others, in which case it may and should be admitted. In such circumstances the court may limit the testimony to the proper purpose at the time of its admission, and should, upon proper request, instruct the jury to consider it in the proper connection only. But in the absence of such a request the party objecting to its admission may not complain that the jury may have considered it for other purposes. The foregoing rules apply where evidence is admissible as between certain parties only, or merely for the purpose of impeachment, and also where testimony is admissible which it is proper for the jury to consider only in case they find certain facts to be true."

Even if appellant's theory was correct, and the purpose of appellees in offering the testimony complained of was to prove the fact that appellant had made the misrepresentations to McClellan originally, instead of merely the fact that McClellan stated to Miss Parker that he had done so, repeating the statements made by appellant to him, McClellan, the occasion would have available a well known exception to the hearsay rule, because R. P. McClellan, himself, as well as Mrs. McClellan, testified positively that the misrepresentations were made by appellant directly to R. P. McClellan. This exception, and the effect thereof, is well stated in the closing paragraph of section 224, p. 546, vol. 17, Texas Jurisprudence, viz.: "The admissions or declarations are admissible as substantive evidence, and may be proved against the party making them without laying a predicate for their introduction. Testimony as to declarations or admissions of this character is sometimes referred to as an exception to the rule excluding hearsay testimony, but it is not hearsay when given by a witness to whom the statements were made by the party against whose interest the admissions were directly made."

■ In the following related matters, appellant urges that the trial court materially erred, viz.: (a) In refusing to submit to the jury the question as to whether or not a street or roadway existed in front of the involved lot, although timely and duly requested by appellant to do so; and (b) in the finding of facts in reference to this issue presented by the pleadings and supported by the evidence, which facts so found were incorporated in the judgment of the court as material to its rendition, viz.: See findings of fact by the court herein set out. This has required the making of a careful search of the statement of facts bearing upon this particular phase of the case to discover whether or not there was before the court evidence presenting a conflict in the testimony anent the existence, vel non, of a public street immediately in front of the involved lot, at or since the time of the negotiations between appellees and appellant in reference to the acquisition of said lot by appellees. We have carefully examined the testimony of all of the witnesses bearing upon this phase of the case, viz.: W. H. Quinn, W. M. McVeigh, A. M. Morris, J. S. Land, W. P. Gibson, A. F. Adrian, Dr. V. B. Cozby, J. C. Alsup, E. T. Nance, and E. P. Friedline, and reached the conclusion that there was no real conflict therein as to the condition, the title, and use of the strip of land immediately north of the lot in question, and that the undisputed evidence in reference thereto plainly established that there was actually no public street in front of said lot and no legal right to ingress and egress; and further discloses that there was no controverted issue of fact as to whether the public had acquired a right to a street at that point by prescription, and further that no dedication of such a street had been made by the Texas & Pacific Railway Company to the public, or of the legal title to the tract of land constituting a part of its right of way immediately in front of the involved lot. Assembling the testimony of the above-named witnesses and according to that given by each witness its proper legal effect, we find the following essential facts to have been established thereby and without material conflict therein, viz.: That in the city of Grand Saline the Texas & Pacific Railway Company owned, and had owned since the 9th of May, 1876, in fee simple, its right of way which extended south 200 feet from the center of its main line, which ran east and west; that its fee-simple title to its right of way south of the main line extended to and adjoined the north line of block 27, in which the lot in question was situated; that it also extended to and adjoined the property line (and "gallery") of the Wright or Commercial Hotel, which adjoined the involved property on the east; that no part of this railroad right of way was ever fenced and that no signs prohibiting trespassing were placed thereon; that on the same right of way were located stock-loading pens, cot-

ton-loading platforms, and oil-loading tanks; that it was necessary to keep the right of way open on all sides in order that patrons of the railroad could conveniently get to these pens, platforms, and tanks; that the city of Grand Saline at one time built a concrete watering trough near the center of this part of the right of way, which was built for the use of, and was used by, both the patrons of the railroad and the general public, it having been placed there by permission of the railroad company; that those few property owners residing south and southwest of the railroad right of way, and any one else who desired to, were permitted by the railroad company to drive their cars and teams promiscuously across the southern portion of the right of way, "angling across" and into Main street (which runs north and south through the city of Grand Saline), in any manner desired by them, but on no particularly well defined route; that parts of the southernmost part of the right of way were graded and graveled at various times by both the railroad company and the city of Grand Saline; that no move was ever made by the city of Grand Saline or Van Zandt county to condemn any portion of the railroad's right of way for street purposes under the right of eminent domain, and that no dedication of any part of the right of way was ever made by the railroad company for such purposes; that the street commissioner of the city of Grand Saline recognized that the property belonged exclusively to the railroad company; that the public used it by permission of the railroad company; and that the railroad company had the right at any time to close it up and prohibit further use thereof by the public. That after appellees had given notice to appellant of their rescission of the contract for the purchase of the involved lot, said railroad company built a spur track on its right of way, running east and west and being from 30 to 51 feet north of the north property line of the involved lot. We think the above facts clearly establish (a) that there was no public street in front of the lot in question; (b) that no legal right to ingress and egress thereto existed; and (c) that whatever use was made by the public of that portion of said railway company's right of way immediately in front of and adjoining the involved lot, was merely a permissive use of a portion of said railway company's right of way, and that the use of said right of way was not by the general public under a claim of right. Cunningham v. San Saba County, 1 Tex. Civ. App. 480, 20 S. W. 941; Heilbron v. St. Louis Southwestern Railway Co., 52 Tex. Civ. App. 575, 113 S. W. 610, 979; Bryson v. Abney (Tex. Civ. App.) 171 S. W. 508. This assignment is therefore resolved against appellant's contention.

▇ Furthermore, we are of the opinion that, even if we could say that there was a controverted issue of fact, as to whether the public had acquired a right to a street in front of the lot in question by prescription, there was no legal obligation on the part of appellees to accept title to the involved lot; the only right to a street furnishing the means of ingress and egress to said lot depending on a limitation title to the tract of land that could alone furnish "the street" in front of it, the validity of that claim of title remaining to be ascertained by judicial determination. This, we think, is sound on the theory that appellees could not be required by appellant, under his contract of sale, to accept a limitation title to the lot itself and therefore could not be required to accept title to the lot, it having been represented to appellees by appellant as an inducement to purchase the involved lot, that a public street was immediately in front of said lot and said railway company's right of way, the only right of the public in and to such "a street" being based upon limitation or prescription, the validity of which had never been properly adjudicated. Rabinowitz v. Darnall (Tex. Com. App.) 13 S.W.(2d) 73; Wakeland v. Robertson (Tex. Civ. App.) 219 S. W. 842; Moore v. Price, 46 Tex. Civ. App. 304, 103 S. W. 234. We therefore overrule said assignment and proposition based thereon.

All other assignments and propositions not specifically discussed herein have been carefully considered, and finding no reversible error presented thereby, same are overruled, and the judgment of the trial court is in all things affirmed.

Affirmed.