## LESLIE C. HUGHES

*v.*

## JOHN LOCKINGTON.

*Opinion filed April 17, 1906—Rehearing denied June 13, 1906.*

1. FRAUD—*representation·as to price of land is material.* A representation to a proposed buyer, by the party arranging the sale, as to the price of the land is a representation of a material fact and· not ·an expression of opinion, where the latter knew the price was only one-half of what he represented it to be, but colluded with the seller to deceive the buyer as to the price.

2. SAME—*what sufficient to sustain claim for damages in action for deceit.* In an action by the buyer of land against an agent for deceit in misrepresenting the price of land, the loss of the. plaintiff's property sold under a chattel mortgage given to the agent to secure a loan for part of the purchase price, and the expense incurred by the plaintiff in defending a suit to foreclose the purchase money mortgage on the land, are sufficient to sustain the plaintiff's claim for damages, notwithstanding he might have successfully defended the foreclosure suit on the ground of fraud.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. J. W. MACK, Judge, presiding.

On July 16, 1901, the appellee, John Lockington, began an action of trespass on the case against the appellant, Leslie C. Hughes, in·the circuit court of Cook county, for fraud and deceit in the sale of a certain piece of real estate. The facts upon which the action was founded were substantially as follows: John Lockington had known Hughes three or four years prior to September, 1900, having done work for him. Hughes was a florist, and had a.shop near an ice cream stand owned by Lockington's wife. During the summer Hughes frequently spoke to Lockington of the advisability of his buying a small farm and raising vegetables and flowers for market. He told Lockington that he knew of a man who had a farm for sale near Bass Lake, Indiana, and that if Locking-

ton would leave it to him he would put the deal through. A few days afterward Hughes told Lockington that he had met the owner of the land, and exhibited a plat of the property, saying it was all right and a fine piece of land for growing plants. George Scovill, the owner of the land, had known Hughes about twenty years. In the summer of 1900 Hughes went to Bass Lake and told Scovill that he knew of a man who might purchase his property and engage in the raising of vegetables under glass. He asked the price of three pieces of land, and Scovill asked $500 for them. Hughes told him that he could get $1000 for the land, and sought to make arrangements for the sale at that price so that Lockington would not know the actual consideration. After Hughes had returned to Chicago he wrote Scovill two or three letters. A week or two later Hughes and Lockington went to Bass Lake to look at the land. Hughes stated to Scovill, in the presence of Lockington, that he was satisfied with it, and that he supposed the lowest price was $1000, to which Scovill assented. They arranged that Hughes should send Scovill a check for $100 on Lockington's account as earnest money, if the latter should, after consulting with his wife, decide to purchase. They returned to Chicago, and shortly afterwards Hughes wrote Scovill to come to Chicago to close the deal. They all met on September 24, 1900, at Hughes' house, and Scovill had the deed drawn conveying the property to Lockington and wife, and had notes for $500, together with a mortgage, ready for Lockington's signature. Lockington asked Scovill if he had received the $100 sent by Hughes, to which the latter replied that he had. Lockington then went to the bank and drew his money, which he handed to Hughes, who counted it and remarked that it was all right. Hughes retained the money until the next morning, when the papers were exchanged. The deal was closed by Lockington paying $350, giving Hughes a note for $150 secured by a chattel mortgage on a horse and wagon, and by giving to Scovill a mortgage for $500 upon the premises sold. The chattel mort-

gage on the horse and wagon belonging to Lockington was foreclosed, and a bill was filed to foreclose the mortgage on the real estate and a decree rendered. Long after the deal was closed Lockington discovered that Scovill had only asked $500 for the land, and brought this suit for the fraud and deceit perpetrated upon him by Hughes.

Upon a trial before the court and a jury a verdict was rendered for $1500. The court required a *remittitur* of $250 to be entered and judgment was rendered for $1250, which has been affirmed by the Appellate Court. A further appeal has been prosecuted to this court.

GEARON & GEARON, for appellant:

Even though the defendant be guilty of fraud, he is not liable in an action of deceit unless the plaintiff has sustained actual damage. Pomeroy's Eq. Jur. sec. 898; *Rogers* v. *Higgins,* 57 Ill. 244; *Bartlett* v. *Blaine,* 83 id. 25; *Jones* v. *Foster,* 175 id. 459; *McGann* v. *Bliss,* 2 Mass. 111; *Dudley* v. *Briggs,* 141 id. 582.

A false representation, in order to be the basis of an action for deceit, must be a representation of an existing or past fact, and not a mere promise or expression of opinion. *Murphy* v. *Murphy,* 189 Ill. 360; *People* v. *Healy,* 128 id. 9; *Haenni* v. *Bleisch,* 146 id. 262; Kerr on Fraud and Mistake, (Bump's ed.) 88.

JOHN E. AMOS, Jr., for appellee:

To recover in an action for deceit it is only necessary for the plaintiff to prove that the representation was false, that the party making it knew it to be false, and that the plaintiff relied upon the representation as true and was induced to act upon it and was injured. *Merwin* v. *Arbuckle,* 81 Ill. 501.

Where a person, with a design to deceive and defraud another, makes a false representation of a matter, by which the party to whom the representation is made enters into a contract and sustains an injury thereby, an action on the case in the nature of deceit will lie at the suit of the party injured

against the one making the representation. *Weatherford* v. *Fishback,* 5 Scam. 170; *Nolte* v. *Reichelm,* 96 Ill. 425.

The motive which actuated the defendant in making the false statement is wholly immaterial. *Eames* v. *Morgan,* 37 Ill. 260; *Peak* v. *Walton,* 52 Ill. App. 90.

Where the injury is made out it is not necessary that actual damages be shown to entitle the plaintiff to exemplary damages, the case being otherwise proven in such damages. *McNay* v. *Stratton,* 9 Ill. App. 215; *Lowry* v. *Coster,* 91 Ill. 182; *Jacoby* v. *Stark,* 205 id. 34.

Exemplary damages may be recovered in case of willful and deliberate fraud followed by actual damages. Compensation is not necessary. *Kelly* v. *Valentine,* 17 Ill. 87.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The evidence clearly shows that the conduct of Hughes was fraudulent and wholly defenseless.

Complaint is made of the refusal of the court to give the fifth instruction offered by appellant, which was to the effect that before a party can recover for false representations it must appear from the evidence that the alleged false representations were made regarding something which had already transpired or was then alleged to exist, and that no statement of one's opinion as to what will or will not happen or exist in the future can affect a contract or render it void. It is insisted that appellant was entitled to have this instruction given for the purpose of limiting certain testimony to the effect that Hughes represented the soil to be so productive as to produce twenty-five thousand plants per year, etc. The instruction had no application to the case, for the reason that the alleged misrepresentation was not as to the character of the soil, but the false representation was as to the amount which Lockington was to pay for the land, and which was the misrepresentation upon which the action was based. This representation was made regarding a material fact which had existed, and was not as to the something which was to

take place in the future, nor was it the expression of a mere opinion.

Complaint is also made of the modification by the court of the fourth instruction offered and given on behalf of appellant. This instruction was to the effect that the law presumes that all men are fair and honest and that their dealings are in good faith and without intent to cheat and defraud others, and where a transaction is called in question and is equally capable of two constructions, one that is fair and honest and the other that is dishonest, the law is that the fair and honest construction must prevail. The instruction was modified by the court by the addition of the words, "unless proven by the preponderance of the evidence to be otherwise." The instruction as originally submitted stated a correct proposition of law, and it would not have been error for the court to have given it as offered, but the modification did not render it erroneous or misleading. In other words, the additional language did not materially change the meaning of the instruction.

It is also insisted by appellant that before appellee could recover he must have proved three propositions: First, the misrepresentation of a material past or existing fact by the defendant with the intent and for the purpose that the plaintiff should act upon it; second, that plaintiff did act and rely upon such statement; third, that he sustained legal damages in consequence of such action; and assuming that the testimony establishes the first two of these propositions, yet there is a total want of proof that appellee suffered pecuniary loss, for the reason that Scovill, being confessedly a party to the fraud, could not enforce payment of the notes, notwithstanding he appeared to have obtained a decree of foreclosure for the whole amount of the fraudulent as well as the actual consideration. This contention is not sustained by the proof. While it is true that Scovill could not have enforced the payment of the notes on the decree of foreclosure if appellee had taken the proper steps and could have proven the facts, there

is evidence tending to prove all three of the propositions above stated. Hughes, in the first place, represented to Lockington that Scovill wanted $1000 for his property. This statement was false, and Hughes knew it to be false. Lockington had confidence in Hughes, and, relying upon the statement as made, purchased the property, paying $500 to Scovill, $150 of which he borrowed from Hughes, and he gave Scovill a mortgage for $500 balance of the purchase price. The amount borrowed from Hughes was secured by a mortgage given by Lockington on his horse and wagon. After Lockington's failure to pay the mortgages they were both foreclosed and the horse and wagon sold, and thus lost to him. He was also put to the expense of defending the foreclosure case in order to protect his rights. All of these caused him a pecuniary loss sufficient to sustain his claim for damages.

We find no reversible error, and the judgment will be affirmed.