HOKANSON *v.* OATMAN.

1. BROKERS—DUTY—FRAUD.

A broker, who represented to one negotiating with him to purchase a farm that the owner's price was $1,200, and that was the lowest price obtainable, when in fact the price at which the owner listed the land was $900, is liable for the difference, in assumpsit, to the purchaser who relied on the representations.

2. SAME.

The rule of *caveat emptor* does not apply to such representations.

3. FRAUD—OPINION.

Representations by a broker that the price stated by him was the lowest obtainable for a farm, that the owner had reduced the price from a higher amount and the property was a bargain, although the owner had fixed a lower price, the purchaser being unacquainted with farm values and relying on the broker, were not mere statements of opinion but constituted representations of facts and entitle the purchaser, if they were false, to maintain assumpsit for fraud and deceit, under 3 Comp. Laws, § 10421.

Error to Muskegon; Sessions, J. Submitted February 14, 1911. (Docket No. 158.) Decided May 8, 1911.

Assumpsit by Victor Hokanson against Charles Oatman for fraud. Judgment for plaintiff. Defendant brings error. Affirmed.

*Cross, Vanderwerp, Foote & Ross*, for appellant.

*Turner & Turner*, for appellee.

BLAIR, J. The plaintiff's declaration avers that defendant, a real estate agent, offered for sale to plaintiff 80 acres of land, "and agreed to sell the same to said plaintiff for the price the owner then asked for the same, and said plaintiff then and there agreed to and with said de-

fendant to pay him, said defendant, the price that the owner then asked for said property; but said plaintiff avers that said defendant, at the time and place aforesaid, falsely and fraudulently pretended and stated and claimed to this plaintiff 'that the owner asked $1,200 for said property, and that that was the owner's price for the same.'" That plaintiff was induced by the fraudulent representations to pay $1,200 for the land, whereas the owner's price was in reality only $900, and "by means of the premises plaintiff became and was entitled to receive of and from the said defendant the sum of $300; that being the amount received by said defendant in excess of the price agreed upon for said land aforesaid," etc.

Plaintiff recovered judgment, and defendant has removed the record to this court for review upon writ of error.

The plaintiff's testimony tended to show that he called upon defendant with reference to the purchase of the farm in consequence of his advertisement in a Chicago newspaper, and went with him to look over the land on two occasions. Plaintiff testified, in response to questions from his own counsel:

"*Q.* I will ask you what the conversation was between you in reference to the sale of this land?

"*A.* Why, he showed me the place, and after we looked over the place—I believe before we looked at the place—he told me the price would be $1,200.

"*Q.* $1,200?

"*A.* Yes, sir; but after looking at the place I didn't like it exactly, and I asked him if it couldn't be bought cheaper than that. He said, 'No,' that the owner in the first place asked $1,500 for the place, but he got him down to $1,200, knowing that he could sell a bargain better than a high priced place; therefore, if he asked him to sell any cheaper than $1,200, he would take it out of his hands—the owner would. * * * I said I would pay the owner's price; but I only had $900 to pay cash for the place, and he had told me previous to that that he had money in the bank for that purpose, to loan to buyers that couldn't pay cash, and I asked him if he couldn't loan me the rest

of the money, which would be $300, to pay the owner's price, which he agreed.

"*Q.* Now I call your attention to plaintiff's Exhibit 2, being the mortgage referred to. Did you, upon the strength of that statement, execute that mortgage?

"*A.* Yes, sir. * * *

"*Q.* State whether or not you relied upon the representations that the defendant, Oatman, made at that time as to that being the owner's price for the land?

"*A.* I did.

"*Q.* State whether or not, on account of those representations, you were induced to part with the consideration and to pay the consideration that you did?

"*A.* Yes, sir.

"*Q.* Now this mortgage that I called your attention to, you afterwards paid, did you?

"*A.* Yes, sir."

The owner of the land testified to a conversation over the telephone with Oatman:

"I told him I would take $900, and I think Mr. Oatman informed me that Mr. Marshall had informed him that that was the price I asked for it. He said that he had had some parties out there to look at it, and that they would give $900 for it, but they wouldn't give any more. * * * That he got these parties there, and I think he said they were from Chicago, and they would give $900 for it, but unless he could make something he should try to sell them something else, and I asked him what he wanted, and he said, ' Well, I want to have $50,' and I made some remark that $50 was cheap enough for selling the place, but I says, ' Can't you get these people to give enough more to pay this $50?' I think I said to him that I had more than $900 in it, and didn't want to take less than $900 net to me. He said, ' No; that is every dollar they will give.' Then I asked him what the terms would be if the sale was made, and he told me it would be all cash. I finally, while I was there at the telephone—it couldn't have been over a few minutes—I says, ' Well, if that is all you can get, rather than let it go, I would rather give you $50 than not to make the deal,' and he then said that I would get a letter from him; he would write me and tell me the parties' names, I think."

Plaintiff relies upon *Barnard* v. *Colwell*, 39 Mich. 215, and *Hidey* v. *Swan*, 111 Mich. 161 (69 N. W. 225), as supporting his cause of action. Counsel for defendant contend that there is no analogy between this case and the cases above cited; that there was no agreement in advance to pay "the owner's price," stated later at $1,200; that the agreement was a plain agreement to pay $1,200 for the land, and a verdict should have been directed for defendant. The plaintiff's testimony is quite uncertain and conflicting, but the verdict of the jury has resolved all doubts and uncertainties in his favor.

Error is also assigned upon the following portion of the charge:

"To entitle the plaintiff to recover in this case, he must have satisfied you by a fair preponderance of the evidence in the case that the defendant, in making this sale and in this deal and transaction, was acting as the agent of Mr. Hendrick, the owner of the land, and was to receive as compensation for making the sale from Mr. Hendrick a commission, and that the defendant did state and represent, in substance, to the plaintiff, that the owner's price— that is Mr. Hendrick's price—for the land was the sum of $1,200, and that the amount of money which was represented by the mortgage was to be paid to Mr. Hendrick as a part of the purchase price going to him for the land, and that Mr. Hendrick's price was the sum of $900, less a commission, instead of the sum of $1,200, less a commission; and if you find from the evidence in the case that the defendant in making this sale to the plaintiff and his wife was acting as the agent of Mr. Hendrick and received a commission from Mr. Hendrick as such agent, and that he did represent and state in substance to the plaintiff that Mr. Hendrick's price for the land was the sum of $1,200, and that the whole sum of $1,200, less the commission, was to be paid over to Mr. Hendrick for the land, and that the plaintiff was thereby deceived, the plaintiff is entitled to recover in this case."

The criticism of this charge, as stated by counsel in the brief, is as follows:

"Under this instruction, the right of plaintiff to recover

was made to depend, not upon an agreement to sell at the 'owner's price,' followed by misinformation as to the amount of that price, as charged in the plaintiff's declaration, but upon precisely such a false affirmation concerning the price as this court, in *Barnard* v. *Colwell*, held could not be relied upon by the plaintiff, and did not, in itself, constitute a cause of action. Recovery was permitted in *Barnard* v. *Colwell*, not because of the false representation as to the price which defendant had paid for the land, but because the defendant agreed to sell the land for what it had cost him, and, having received from the plaintiff more than the agreed price, the plaintiff was adjudged entitled to recover.

"In the case at bar, the agreed price was $1,200, and there was no overpayment to be recovered. Under the charge complained of, the false representation is made a ground of recovery in itself, when in fact, under the law, and under the allegations in plaintiff's declaration, there could be no recovery, except upon the theory that plaintiff, through misinformation, had been induced to pay the defendant more than the agreed price. This essential and basic feature of the plaintiff's alleged cause of action was not presented to the jury for determination, but in lieu thereof, they were left to infer that the amount which plaintiff agreed to pay for the land was of no moment whatever, and they were told, in substance, that if defendant was the agent of Hendrick, and made a false representation to plaintiff concerning the price, plaintiff was entitled to recover."

A case precisely in point, except as to the form of the action, was before the Kentucky court of appeals, and it was held that:

"Where the purchaser of property from a broker was induced to pay more than the owner asked for the property by the fraudulent representation of the broker that the owner would not accept less than the price paid, the purchaser is entitled, in an action for deceit, to recover of the broker the excess, which he pocketed, less the usual commission for making the sale." *Kice* v. *Porter* (Ky.), 53 S. W. 285; *Kice* v. *Porter* (Ky.), 61 S. W. 266.

While it may be inferred from the remarks of Mr. Justice COOLEY, in *Barnard* v. *Colwell*, that the court

was of the opinion that an action for fraud and deceit would not lie for such misrepresentations, such holding was not necessary to the decision, since it was held that a good cause of action in assumpsit for money had and received was stated in the declaration, upon which plaintiff was entitled to put in his evidence.

In *Stoney Creek Woolen Co.* v. *Smalley,* 111 Mich. 321 ( 69 N. W. 722 ), it was held that the rule of *caveat emptor* does not apply to such representations, and we deem this to be the better rule. *McDonald* v. *Smith,* 139 Mich. 211 ( 102 N. W. 668 ); *Van Epps* v. *Harrison,* 5 Hill ( N. Y.), 63 ( 40 Am. Dec. 314); *Fairchild* v. *McMahon,* 139 N. Y. 290 ( 34 N. E. 779, 36 Am. St. Rep. 701 ).

The verdict of the jury establishes gross fraud practiced by defendant, both upon the plaintiff and the owner of the property. The plaintiff was a color mixer, residing in Chicago, wholly ignorant of the value of farm lands, and unable to form any rational estimate of such value by inspection. Knowing these facts and relying upon them to enable him to carry out his fraudulent scheme, defendant stated, in reply to plaintiff's question if the farm could not be bought cheaper, the representations hereinbefore quoted, contending that he had induced the owner to reduce the price to a point where it was a bargain, and the very lowest price the owner would accept. He also induced the plaintiff to believe that the $300 secured by the mortgage was for the benefit of the owner.

The representations by defendant were not mere statements of opinion as to the value of the property, but were statements of facts within his own knowledge and unknown to plaintiff, which were intended to, and did, influence him in making the purchase, and upon which he had a right to rely.

We agree with the conclusion of the Kentucky court of appeals that plaintiff made out a case of fraud and deceit, for which he was entitled to maintain an action of assumpsit under our statute. 3 Comp. Laws, § 10421.

*First Nat. Bank of Ovid* v. *Steel*, 136 Mich. 588 (99 N. W. 786).

We find no reversible errors in the record, and the judgment is affirmed.

HOOKER, MOORE, MCALVAY, and BROOKE, JJ., concurred.