## FRANK MORROW vs. LOUIS URSINI ET ALS.

Third Judicial District, Bridgeport, April Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

An owner of land had refused to sell it to a prospective purchaser, or to any one representing him, because such purchaser wished to obtain the land in order to resell it for cemetery purposes. Thereafter the owner was induced by another person to enter into an agreement of sale of the land to the latter's minor son upon his (the father's) fraudulent representations that it was desired for his and the son's use and that they were to occupy it. In fact these vendees had entered into a conspiracy with the first offeror to secure the land for him, and he supplied the money with which to pay a deposit on it, and shortly after the execution of the agreement the vendees quitclaimed their interest thereunder to his wife. *Held* that the owner might have the agreement of sale set aside for fraud, and removed from the land records as a cloud on his title, without showing substantial damage to his pecuniary interests. The case of *Breet* v. *Cooney*, 75 Conn. 338, approved and followed.

Argued April 13th—decided April 27th, 1921.

SUIT to secure the cancellation of a bond for a deed, alleged to have been obtained from the plaintiff by a fraudulent conspiracy of the defendants, and for other equitable relief, brought to and tried by the Superior Court in New Haven County, *Webb, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendants. *No error.*

*Carl A. Mears,* for the appellants (defendants).

*Philip Pond,* for the appellee (plaintiff).

PER CURIAM. The finding sets forth these facts: Louis Ursini, on divers occasions, desired to purchase two lots belonging to the plaintiff, and to sell the same for use as a cemetery. The plaintiff refused to sell for such a use, and finally told Ursini he would not sell to him or

anyone represented by him. Thereupon Ursini agreed with his wife, Catrina, that he should obtain a transfer of these lots from the plaintiff to some other person, who should then convey the same to her. Ursini then arranged with Angelo Dadio that he should purchase the lots in his name or that of his son Michael, for the benefit of Ursini and his wife. Angelo, in company with Michael, then saw the plaintiff and said to him that he desired to purchase the lots for his son Michael, a minor, and Michael assented to this and verbally confirmed it. And Angelo further represented to the plaintiff that he wished to obtain the lots for himself and son for their use and benefit and improvement, and that they were to use and occupy them. These representations were false. The plaintiff, relying upon them, agreed to sell the lots to Angelo and Michael, received from them $70, which sum was provided by Ursini, and the plaintiff executed with Angelo and Michael the bond for a deed which this action seeks to have removed as a cloud upon plaintiff's title.

On August 20th, 1919, Angelo and Michael, by quitclaim deed, conveyed the lots to said Catrina Ursini. The lots and bond were obtained by Ursini and his wife, through Angelo and Michael, by means of a conspiracy for the purpose of inducing by deceit the plaintiff to so transfer the lots contrary to his will as expressed to Ursini.

On August 23d, 1919, the plaintiff began this action. It thus appears that Ursini had tried without success to purchase these lots, and, failing, engaged in a conspiracy to obtain a transfer of the lots by false representations as to who the real purchaser was. The conspiracy succeeded, and the plaintiff, in consequence of the deceit practiced upon him, agreed to transfer the lots. The agreement was procured upon fraudulent representations of Ursini's agent.

An agreement procured in fraud will not be suffered to stand. It will be set aside when the person deceived acts with reasonable diligence. What was said in *Brett v. Cooney*, 75 Conn. 338, 341, 53 Atl. 731, is applicable here. "Equity uncovers such frauds and, when they are exposed, has power to supply a remedy. . . . The plaintiffs had the right to dispose of their house to whom they would. The defendants fraudulently combined to deprive them of this right, and equity will not suffer them to retain the fruits of their deceitful trickery. . . . The violation of a legal right imports damage. . . . Fraudulent representations constitute no ground for equitable relief unless made to one who was induced by them to act to his injury. . . . But in measuring injury, equity does not concern itself merely with money losses. If it finds that a clear right has been invaded, and that redress can be secured by putting the parties back in their original position, it will seldom refuse its aid because the plaintiff can show no substantial damage to his pecuniary interests."

The facts in *Brett v. Cooney, supra,* are in essentials identical with the facts in this case, and we regard its authority as conclusive in this case, and the judgment of the trial court the only one consonant with the rules of equity, which are founded on good morals.

There is no error.