LEO B. SANTANGELO *v.* THE MIDDLESEX THEATRE, INC., ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued May 4—decided June 26, 1939.

*Herman M. Levy* and *Samuel H. Platcow*, with whom was *Marshall Banever*, for the appellants (defendants).

*Thomas C. Flood*, for the appellee (plaintiff).

AVERY, J.  This action was brought by the plaintiff, a real estate broker, to recover a commission claimed to be due him for his efforts in an attempt to sell property of the defendants.  The case was tried to the court and judgment rendered for the plaintiff from which the defendants appealed.  The essential facts appearing in the finding, with such corrections as the defendants are entitled to, are these: On March 9, 1937, following previous correspondence, the defendants, acting by Frank Arrigoni, who was president and agent for both corporations and duly authorized, gave to the plaintiff, a real estate broker, in writing the sole agency for one week to sell defendants' property, known as the Middlesex Theatre and the Middlesex Mutual Building in Middletown.  The price was $150,000, $5000 to be deposited by the purchaser, who was to be given six months in which to complete the transaction, $20,000 additional payable in cash at the time of the conveyance, the assumption of the first mortgage upon the property or the negotiation of a

new one for the same amount and the giving back of a second mortgage for the remainder of the purchase price. Arrigoni had previously informed the plaintiff that the commission would be 3 per cent. on the $5000 deposited as an option, and, if the purchase was fully consummated, $3000. On the same day the plaintiff gave to Salvatore Adorno a writing purporting to grant to him an option for five days from March 9, 1937, to purchase an option upon the real estate upon the terms agreed upon between the plaintiff and defendants. No consideration was paid for this writing. On the day following, March 10, Joseph Adorno, son of Salvatore, knowing that his father was considering the purchase, with the latter's knowledge, proposed to Franklyn Arrigoni, son of Frank, that the two young men in partnership or in a corporation purchase the property. On the evening of the same day the two young men talked with Frank Arrigoni and he verbally agreed with them to sell the option to them on the terms set forth in the agency agreement with the plaintiff, with the secret agreement that he would shade the purchase price to the young men by the amount of $5000. Pursuant to the verbal understanding, on the afternoon of the day following, Franklyn Arrigoni, Joseph Adorno and the plaintiff met in Frank Arrigoni's office, and acting under the directions of the latter, the plaintiff accepted $5000 from Franklyn Arrigoni and Joseph Adorno and gave them a receipt, which in effect granted them the option which the agency agreement of March 9th authorized him to grant.

Subsequently, on March 11th or 12th, a dispute arose between the young men as to the respective interests which each should have in the property. Franklyn Arrigoni on the advice of his father insisted on having a 51 per cent. interest and Joseph Adorno insisted that each should have a 50 per cent. interest. On the

evening of March 12th, Frank Arrigoni, having been informed that the young men were at an impasse in their dispute, telephoned the plaintiff that the deal with the "boys" was off, but the defendants would be willing to pay his commission of $3000, provided he would accept it in instalments of $500 each over a long period of time. In the course of this conversation Frank Arrigoni was informed by the plaintiff that he had started negotiations with Salvatore Adorno and given the latter a five-day option, and the plaintiff requested Arrigoni to come in and see him the following morning. The latter made no reply and did not call as requested. When the telephone conversation was finished, Salvatore delivered to the plaintiff a writing dated March 12th, signed by him notifying the plaintiff that Salvatore exercised the option given him in writing March 9th. No money was paid at that time, but on March 13th Salvatore paid the plaintiff the sum of $5000 in cash and took from him a receipt which was given and accepted upon the verbal agreement between the plaintiff and Salvatore that it was on condition that the option to Franklyn Arrigoni and Joseph Adorno should not be exercised. On March 15th the plaintiff notified the defendants that he had received two cash deposits from two different parties but that the last deposit was accepted on condition that the first option was not exercised and that it was reasonably certain that one or the other of the parties would be ready to close the transaction in accordance with the terms of the option given to the plaintiff by the defendants.

On April 7th the defendants, through their attorneys, notified the plaintiff that the agency agreement of March 9th did not authorize him to grant any conditional option or accept a deposit on that basis. On May 3d Joseph Adorno alone endeavored to exercise

the option granted to him and Franklyn Arrigoni and himself offered to perform the terms of the agreement. Franklyn Arrigoni refused to join in the offer, which was declined by the defendants. Later the defendants were threatened with suit upon this agreement. On September 2, 1937, and prior to the expiration of the agreement made by the plaintiff with Joseph Adorno and Franklyn Arrigoni, the plaintiff and Salvatore Adorno called at the office of the defendants, tendered $20,000 in cash, and offered to carry out in full the terms of the option entered into with Salvatore Adorno. This offer was not accepted. On March 11, 1938, the plaintiff made demand on the defendants for his commission based upon the transaction with Salvatore Adorno.

The defendants have asked for numerous corrections and additions to the finding but no correction is permissible by which the position of the defendants will be materially advantaged.

In their brief, the defendants state the other principal issues involved in this appeal to be: (1) Whether the trial court erred in concluding that the plaintiff's agency was not revoked, (2) in holding that the plaintiff was authorized to grant a conditional option and (3) that the option granted to Salvatore Adorno constituted a conditional option, (4) in concluding that the plaintiff did not violate his duty to his principal, (5) whether there was a material variance between the allegations and the proof and (6) whether the trial court erred in certain rulings on evidence. These questions for the most part do not reach the real point of the case. The questions involved are basically questions of fact: First, was the agency revoked before the deposit of Salvatore Adorno was accepted and the contract made with him; second, whether the plaintiff, under the circumstances of this case, by attempting to

deal with two purchasers, had been guilty of misconduct or bad faith which would defeat his right to a commission. The test of an agent's conduct is honesty, good faith and reasonable prudence. 1 Mechem, Agency, § 1279. With reference to a broker, it has been said to be honesty, good faith and reasonable care and prudence, 9 C. J., p. 535, note 16 [a]. The option given to Franklyn and Joseph involved the giving back to the defendants of a mortgage, and the trial court was right in its conclusion that they were under no obligation to carry out the transaction with Joseph alone after Franklyn had refused to proceed further in the matter. The court concluded that the defendants did not revoke the plaintiff's agency. The court also concluded that under the circumstances the plaintiff was justified in making the arrangement with Salvatore Adorno in view of the fact that he had been notified by Frank Arrigoni that the contract with the young men had been terminated.

There was no express revocation of the plaintiff's authority. It was not revoked by the telephone conversation between Frank Arrigoni and the plaintiff unless the former's words and conduct reasonably interpreted indicated to the plaintiff that the defendants no longer consented to have him act for them. Restatement, 1 Agency, § 119, Comment a. The trial court could reasonably conclude that the plaintiff did not and could not reasonably interpret Arrigoni's words and conduct as intended to revoke his authority and that it was not revoked. Whether or not the option to sell to Salvatore Adorno was conditional is of no moment in this case nor is there any question of variance. The condition was not one which in any way affected the terms of the sale, but was one to be met before the option would become effective. *Trumbull* v. *O'Hara,* 71 Conn. 172, 177, 41 Atl. 546. If and when

that condition was met the option came into effect in full compliance with the terms upon which the property was placed in the hands of the plaintiff for sale and the plaintiff would then fully meet the conditions entitling him to a commission. We see no reason why it is not within his authority to make such an agreement with a prospective purchaser. As the second option in this case would become effective only on the failure to exercise the first, there is no more reason to hold that the acceptance of the first exhausted the powers of the plaintiff than there would be in any situation where a broker procured one purchaser but the transaction was not consummated and he then procured another. The plaintiff having been informed by Arrigoni that the deal with Franklyn and Joseph was off, was entitled to proceed, if he could within the time given to him in his agreement with the defendants, to secure another purchaser for the property; it certainly does not lie in the mouth of the defendants to say to the contrary, when, by Frank Arrigoni's statement, the plaintiff was induced to secure the second option.

It is also well settled that an agent is a fiduciary with regard to matters within the scope of his agency. Restatement, 1 Agency, § 13. The plaintiff, while the option to Franklyn Arrigoni and Joseph Adorno was in effect, could not grant a second option to Salvatore Adorno. *Gesselman* v. *Phillips*, 110 Neb. 416, 419, 193 N. W. 750, 751; *Pollock* v. *Brookover*, 60 W. Va. 75, 78, 53 S. E. 795, 796; *Frank* v. *Stratford-Handcock*, 13 Wyo. 37, 77 Pac. 134, 137; 66 C. J. 493. The plaintiff did not do this but made the second option agreement with Salvatore Adorno only after he had been informed by Frank Arrigoni that the arrangement covered by the other option had been terminated and, even then, the plaintiff only executed the second option upon a verbal agreement with Adorno that the

latter would not exercise it in case the first option was exercised. Later, when it appeared that Franklyn Arrigoni had definitely refused to proceed with the option which the young men had and when, further, the defendants had definitely refused to complete the transaction with Joseph Adorno alone, Salvatore Adorno was justified in proceeding upon the basis that the earlier option had not been exercised and in demanding a conveyance of the property. As he was still ready to proceed with the purchase upon the terms and conditions of his original option as required by the defendants, the plaintiff had fully earned his commission in that he had produced a purchaser ready, able, and willing to buy upon the terms and conditions required by the seller. "It is well settled that a broker in whose hands real estate has been placed for sale by its owner is entitled to the commission agreed upon when his efforts have resulted in a sale, or in procuring a customer who is ready, able, and willing to buy upon the terms prescribed by the owner." *Home Banking & Realty Co.* v. *Baum*, 85 Conn. 383, 386, 82 Atl. 970; *Rosenfield* v. *Wall*, 94 Conn. 418, 419, 109 Atl. 409. There can be no question upon this finding that the plaintiff procured in the person of Salvatore Adorno a customer who was ready, able, and willing to buy upon the terms and conditions required by the defendants.

In regard to the rulings on evidence, for the most part they are not presented as required by our rules, which provide that when the relevancy or materiality of evidence or any other question in dispute cannot be understood without a knowledge of what preceded or followed the question, a brief statement of such facts should be made and, if necessary, a sufficient excerpt from the stenographer's transcript given. The latter method should not be used if the statement will suffice. Practice Book, § 359. The finding in this case simply

presents a series of excerpts from the testimony of witnesses without any finding as to the circumstances under which the rulings were made.

It would appear that the question asked of the plaintiff on re-direct examination as to the information given him by Salvatore Adorno why the arrangement with the young men had been terminated, was admissible as having a bearing upon the plaintiff's good faith in going ahead with Salvatore Adorno. The statements made to Frank Arrigoni by his attorney were properly ruled out on the ground that the reasons for Arrigoni's refusal to go ahead were immaterial. Even if the question asked of Joseph Adorno on cross-examination as to a conversation he had over the telephone with Mrs. Arrigoni was inadmissible, the answer that they were not at her home rendered the ruling harmless. The question asked of Adorno on cross-examination as to what was said to him by Franklyn Arrigoni was admissible for the purpose of showing that there had been in fact a disagreement between the two young men and as bearing upon the question whether the first option had been repudiated. As to the question asked of Joseph Adorno on cross-examination as to what was said to him by the plaintiff in reference to seeing Frank Arrigoni, it does not appear from the finding whether or not this question was proper cross-examination but in any event as far as appears from the answer the error, if any, was harmless.

There is no error.

In this opinion the other judges concurred.