**FEDERMAN, Plaintiff-Appellant, v. STANWYCK et al, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22136. Decided December 17, 1951.

Alfred A. Frost, David Perris, Cleveland, for plaintiff-appellant.

Robert A. Good, Cleveland, for defendants-appellees.

(DOYLE, J, of the Ninth District sitting in place of HURD, J, of the Eighth District.)

## OPINION

By DOYLE, J.:

We encounter this case on appeal on questions of law and fact from the Court of Common Pleas of Cuyahoga County and have conducted a trial de novo. The evidence before us is that which is contained in a transcript of the testimony, coupled with the exhibits presented in the court of first jurisdiction.

The fact that there is presented what appears to have been an improvident act of a 74-year-old man in the gift of a valuable property right to a very much younger husband and wife, who bear no relationship to him either by affinity or consanguinity, has caused this court to read and reread the many pages of testimony, to the end that no detail should escape us in rendering a final judgment.

The trial judge in the Court of Common Pleas accurately states the issues as follows:

"The plaintiff, Ben R. Federman, brings his action seeking to set aside the cancellation of a mortgage and names as the

principal defendants, Edward J. Stanwyck and his wife, Tillie. The plaintiff in his amended petition sets forth his claim in two causes of action. In the first cause, he claims that on or about the first day of June, 1944, the defendants executed and delivered to him their note in the sum of $6,558.53, secured by a mortgage on the home of the defendants on Lipton Avenue in the city of Cleveland. The note was payable in monthly installments of $40.00 each, and provided for interest at the rate of 3% per annum. It was to mature August 1, 1954. The mortgage was duly recorded and became a lien on the home * * *. He claims further that on April 15, 1948, the Stanwyck defendants filed with the county recorder a purported cancellation of the mortgage, and that he, the plaintiff, did not execute such cancellation, that the debt has not been paid and that the pretended cancellation was without consideration. In his second cause of action, the plaintiff includes his claims already stated and says further that at no time was it his intention or purpose to execute any cancellation of the mortgage, and that if his signature appears thereon, the signature was procured without his knowledge or consent and not by his own free will and volition, and that the Stanwyck defendants procured it by fraud and undue influence. By reason of these claims, he prays for a rescission of the purported cancellation and restoration of the mortgage and its lien. By answer, the Stanwyck defendants admit the execution of the note and mortgage and the recording of them, of the cancellation thereof, and assert that the cancellation was executed by the plaintiff and delivered to them. They then proceed to deny all else claimed in the amended petition."

Of course, the plaintiff appellant also seeks a reinstatement of the promissory note evidencing the debt.

There is no question but that the evidence shows beyond a reasonable doubt (even though such is not the degree of proof) that the plaintiff in his own handwriting cancelled the note and mortgage.

Proceeding now from this point, what rules shall govern us in our appraisement of the evidence on the legal question of fraud and undue influence?

There is a distinction between undue influence and fraud. To make a case of fraud, it is generally necessary that the evidence show that by misrepresentations and deception the donor is led into doing something which he would not have done but for the misrepresentations and deception.

Such is not the case before us. To make a case of undue influence in the absence of a fiduciary relationship, generally the free agency of the donor must be shown to have been

overcome. So, when the voluntary disposition of property is made by a person, and such conveyance is made under influence exerted upon him by means of mental, moral or physical coercion, in such force that his act is really not his own, but is the act of another, then the transaction is voidable and may be set aside. Within this limit, argument, persuasion, or even influence brought to bear, are not necessarily objectionable to the law, provided one's mind is free to act and is left free to decide and act upon the considerations which are addressed to it, to the end that the person's acts are really his own voluntary acts.

We find that the facts in the case before us do not justify a finding of fraud or undue influence under this rule.

Proceeding now to the rule pertaining to a fiduciary relationship and its bearing upon undue influence.

Under the rule stated above, a fiduciary relationship as such is unnecessary and immaterial. There, we are talking about an actual undue influence, consciously and designedly exerted upon a party who was peculiarly susceptible to external pressure because of mental weakness, old age, ignorance, necessitous condition, etc. When undue influence of that type is established as a fact, a deed or contract or release obtained, is voidable, and may be set aside without the aid of presumptions.

We now proceed to a situation in which some fiduciary relation, some relation of confidence, subsists between parties. It is claimed that such a situation existed in the present case.

Where a fiduciary relation exists, "No mental weakness, old age, ignorance, pecuniary distress, and the like, is assumed as an element of the transaction; if such fact be present, it is incidental, not necessary,—immaterial, not essential. Nor does undue influence form a necessary part of the circumstances, except so far as undue influence, or rather the ability to exercise undue influence, is implied in the very conception of a fiduciary relation, in the position of superiority occupied by one of the parties over the other, contained in the very definition of that relation." 3 Pomeroy's Equity Jurisprudence (Fifth Ed.), Sec. 955.

Of course, when agents, trustees, or others in a similar legal relationship, intentionally conceal material facts or secure to themselves enrichment directly proceeding from their fiduciary position, agreements entered into accompanying such conduct are fraudulent and may be set aside. There is, however, an entirely different aspect of the fiduciary relationship where there is no intentional concealment, no misrepresentation, no advantage taken through a trust or agency.

"The broad principle on which the court acts in cases of this description is, that wherever there exists such a confi-

dence, or whatever character that confidence may be, as enables the person in whom confidence or trust is reposed to exert influence over the person trusting him, the court will not allow any transaction between the parties to stand, unless there has been the fullest and fairest explanation and communication of every particular resting in the breast of the one who seeks to establish a contract with the person so trusting him." * * *

"Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed." 3 Pomeroy's Equity Jurisprudence (Fifth Ed.), Sec. 956, quoting from Tate v. Williamson, L. R. 1 Eq. (Eng.) 528, 536, and Tate v. Williamson, L. R. 2 Ch. 55, 60, 61.

In respect to the principles of law stated in the preceding paragraph, the relation and duties there discussed may be moral, social, domestic or personal. If a relation of trust and confidence exists, when confidence is reposed by one party and a trust accepted by the other, or when confidence has been acquired and abused, such a fact is sufficient as a predicate for relief. The origin of the confidence is immaterial.

Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 54 A. L. R. 1173; Hoge v. George, Admr., 27 Wyo. 423, 200 P. 96, 18 A. L. R. 469; Varner v. Carson, 59 Tex. 303.

Under circumstances where gifts of property are improvidently made and there is evidence tending to prove a fiduciary relationship of the type now being discussed, while equity recognizes under many circumstances the validity of such transactions between the parties, yet, because every fiduciary relation implies a condition of superiority held by one of the parties over the other, in transactions between them, by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively the fairness of the transaction and its compliance generally with all equitable requisites.

Bearing in mind at all times the many guides which the rules of equity declare, and thoroughly sifting the evidence before us, we can come to no other conclusion than that the gift in question was a voluntary act and free from fraud and undue influence.

Assuming that the evidence justifies a finding that confidence was reposed by Mr. Federman in the Stanwycks, and that the influence which ensued from that confidence was possessed by the Stanwycks, and as a result thereof, equity raises a presumption against the validity of the cancellation, nevertheless under the facts extant, it appears to this court that there has been affirmatively proved such a compliance with all equitable requisites that the presumption of invalidity has been overcome.

It has long been the law that a person in the possession of all of his faculties, as we find Mr. Federman to have been in the instant case, has the right to dispose of his property as he sees fit. To hold that voluntary gifts, with full knowledge of all the facts, and of the nature and effect of the gift, should be set aside because the donor has divested himself of a great part of his property, would be in effect to rule that no person can make a voluntary disposition of his estate except by will. Such has never been the law in this state. And when there has been shown an entire absence of fraud, undue influence or imposition, such as we find in the case before us, a gift made voluntarily will not be set aside because the donor subsequently changes his mind and regrets his benevolence, or merely because a court of equity may regard his act as improvident.

See: 160 A. L. R. 1133, annotation on "Improvidence Of Donor As Affecting Validity Of Gift."

The appellant urges this court to apply the so-called rule of "independent advice." There are cases in other states which lay down a rule to the effect that, in order to rebut the presumption of undue influence arising from the fact that the parties to a gift of property stood in a confidential or fiduciary relation, it is necessary to show that the one reposing confidence acted upon independent advice.

Such a rule has never been adopted in this state, and this court does not believe that such a rule should now be declared.

We adopt the general rule to the effect that, in cases where it is claimed that confidence has been abused, or the transaction was unfair and was the result of undue influence which is inferred from the relationship of the parties, the existence or nonexistence of independent advice should be considered as evidence bearing upon these questions. See annotation 123 A. L. R. 1505 and cases therein cited.

In the case before us, we have considered this question as an evidenciary fact in reaching our conclusion.

It may be that what is here written is a work of supererogation, in view of. the written opinion of Judge Blythin, who

heard the case in the court below. We reach the same factual and legal conclusions as did Judge Blythin, and, with his permission, will include by reference in this opinion his splendid and accurate analysis of the facts and the law of the case before us.

Decree for defendants appellees. Exceptions noted. Order see Journal.

SKEEL, PJ, THOMPSON, J, concur.