## Fowler V. Harper *v.* Jere Adametz et al.

Baldwin, O'Sullivan, Wynne, Daly and Bordon, Js.

Argued January 6—decided March 1, 1955

*Fowler V. Harper,* pro se, and *Catherine G. Roraback,* for the appellant (plaintiff).

*Richard C. Parmelee,* with whom, on the brief, was *Bernard A. Kosicki,* for the appellees (defendants).

BALDWIN, J. This action, based upon fraud, was brought by the plaintiff against the named defendant and his son Walter Adametz. The court rendered judgment for the defendants and the plaintiff has appealed.

The facts found, which are not subject to correction, are as follows: Joseph B. Tesar was conservator of the estate of his father, William Tesar, an incompetent, who owned eighty acres of land and the buildings thereon in the town of Haddam. The defendant Jere Adametz, a real estate agent, hereinafter referred to as Jere, was acting as agent for the sale of Tesar's property. Jere advertised a portion of it, consisting of five acres and an old colonial house, for $6200, and the advertisement, in a New Haven newspaper, came to the attention of the plaintiff. On December 6, 1948, the plaintiff wrote to Jere expressing an interest in the property advertised. Jere acknowledged this letter on December 8. On December 12, Jere showed the plaintiff the eighty-acre farm and told him that the seller was asking $8500 for it but that the buildings and a smaller

acreage could be bought for less. The plaintiff made no offer but showed an interest in purchasing the smaller acreage. On the following day, December 13, Jere wrote to Joseph Tesar, the conservator, stating that he had a client who had offered $6500 cash for the farm (meaning eighty acres) and asked for an immediate reply. On December 15, the attorney for Tesar wrote to Jere stating that Tesar would accept the offer for the entire farm subject to the approval of the Probate Court and asking that a written offer with at least a 10 per cent deposit be sent to him.

The plaintiff visited the property on December 19 and 26, and on one of those dates he made an offer to Jere of $7000 for the entire farm. Jere promised to convey this offer to Tesar, but he did not do so. Instead, he sent his own check for $500 to Tesar on December 29 as a deposit on the purported offer of $6500. Jere told Fred Mazanek, a relative of the Tesars, that the plaintiff wanted to purchase only a small portion of the acreage and that he, Jere, would like to obtain the rest for his son but that he did not want to lose his commission. He prevailed upon Mazanek and John Hibbard, a friend of the family, to act as a medium for the passing of title to the farm. On or about January 2, 1949, Jere told the plaintiff that his offer had been rejected because Tesar desired to keep a major portion of the farm in the family and that certain relatives of the Tesars wished to buy most of the acreage, but that he, Jere, could arrange for the plaintiff to buy the buildings and part of the land. The plaintiff then made an offer of $6000 for seventeen acres, including the buildings, and Jere accepted the offer. The plaintiff was satisfied with his purchase.

On January 4, Joseph Tesar signed a contract to sell the entire farm of eighty acres to Mazanek and Hibbard for $6500. The sale was approved by the Probate Court, and a conservator's deed dated January 26 was delivered on February 8 to Mazanek and Hibbard. At the same time, on February 8, they executed and delivered a deed for seventeen acres, including the buildings, to the plaintiff, who paid $6000. On March 11, Mazanek and Hibbard conveyed sixty-three acres, the balance of the farm, to the defendant Walter Adametz, Jere's son. Mazanek and Hibbard were mere "go betweens" who paid nothing when they "bought" the farm and received nothing when they "sold" it to the plaintiff and Walter. Walter paid nothing for the sixty-three acres he acquired. Tesar did not know of the plaintiff's offer of $7000 for the entire farm, and the plaintiff did not know that this offer had not been transmitted to Tesar. The representation by Jere to Tesar on December 13 that he had a $6500 offer for the farm was false. At the time he sent his own check for $500 to Tesar on the purported offer of $6500, the only offer he had was the plaintiff's offer of $7000. Jere engineered the transactions herein related to obtain sixty-three acres of the farm for himself and Walter at the price of $500 and at the same time collect a commission of $325 for the sale.

On these facts, the court concluded that Jere was the agent for Tesar and not for the plaintiff, that there was no contract between Tesar and the plaintiff for the purchase of any property other than the buildings and seventeen acres of land, that the plaintiff sustained no loss by reason of any misrepresentation made by Jere, and that therefore the plaintiff had failed to prove actionable fraud.

It is the general rule that in an action at law for fraud the plaintiff, to recover, must prove that he has been injured. *Helming* v. *Kashak,* 122 Conn. 641, 643, 191 A. 525; *Macri* v. *Torello,* 105 Conn. 631, 633, 136 A. 479; *Bradley* v. *Oviatt,* 86 Conn. 63, 67, 84 A. 321; *Barnes* v. *Starr,* 64 Conn. 136, 150, 28 A. 980. In the ordinary case, this means that the plaintiff must sustain a substantial pecuniary loss. See Prosser, Torts, p. 768; Harper, Torts, p. 470. The plaintiff in this action did receive what he paid for. See *Gilfillen* v. *Moorhead,* 73 Conn. 710, 714, 49 A. 196. He did not, however, because of Jere's fraud, obtain what he was seeking. While acting as an agent for Tesar but with the intent of making a secret profit for himself, Jere told his principal that he had a cash offer of $6500 for the entire farm. This statement was false, and in making it Jere violated his trust. His conduct was a fraud upon Tesar. *Santangelo* v. *Middlesex Theatre, Inc.,* 125 Conn. 572, 577, 7 A.2d 430; *Kurtz* v. *Farrington,* 104 Conn. 257, 269, 132 A. 540; *Herzog* v. *Cooke,* 99 Conn. 366, 370, 121 A. 868; *Schleifenbaum* v. *Rundbaken,* 81 Conn. 623, 625, 71 A. 899.

Jere was not the agent of the plaintiff. Nevertheless, he could not deliberately deceive him. It was Jere's advertisement in the newspaper which had aroused the interest of the plaintiff in the property and had brought him to Haddam to inspect it. Jere told the plaintiff at that time that the entire farm was for sale for $8500. When the plaintiff later made an offer of $7000 for it, Jere said nothing about having submitted a bogus offer of $6500, and he promised to submit the plaintiff's offer to Tesar. He failed to do so and later lied to the plaintiff by telling him that Tesar had rejected it. It was not until after this that the plaintiff offered $6000 for

seventeen acres and the buildings. It can be claimed that when the plaintiff made his $7000 offer Tesar had already signified his willingness to accept the purported offer of $6500 made by Jere in behalf of a fictitious client and that the plaintiff's offer came too late. But the $6500 offer was a fraud and Tesar was not bound to accept it. He could have revoked Jere's authority. *Mansfield* v. *Mansfield,* 6 Conn. 559, 562; 1 Mechem, Agency (2d Ed.) §§ 563, 564; Restatement, 1 Agency § 118. Thereafter, he could have sold the property to the plaintiff. Jere's false statements, his concealment of the facts, his promise to submit the plaintiff's offer to Tesar when everything indicates that he had no intention of doing so, worked a fraud upon the plaintiff. *Green* v. *Brown,* 100 Conn. 274, 278, 123 A. 435; *McLaughlin* v. *Thomas,* 86 Conn. 252, 257, 85 A. 370; *Sallies* v. *Johnson,* 85 Conn. 77, 80, 81 A. 974; *Stern Bros., Inc.* v. *New York Edison Co.,* 251 App. Div. 379, 381, 296 N.Y.S. 857; *Fottler* v. *Moseley,* 179 Mass. 295, 298, 60 N.E. 788; *David* v. *Belmont,* 291 Mass. 450, 453, 197 N.E. 83; Restatement, 3 Torts § 525. As a result, the plaintiff has been denied the right to have his bona fide offer of $7000 submitted to Tesar. In short, the plaintiff has been deprived of his bargain. Jere and Walter, by their fraud, have acquired sixty-three acres of land for $175.

This is an action in equity as well as at law. Equity is a system of positive jurisprudence founded upon established principles which can be adapted to new circumstances where a court of law is powerless to give relief. 1 Pomeroy, Equity Jurisprudence (5th Ed.) p. 78. In equity, as in law, misrepresentation, to constitute fraud, must be material. 3 id., § 876; Bogert, 3 Trusts & Trustees, § 473. That is to say, the representation must prejudice the

party relying upon it. He must suffer some injury or pecuniary loss. Some courts have held that the pecuniary loss need be only slight. 3 Pomeroy, op. cit., pp. 535, 536, and cases cited n.8. Others have held that mere lack of pecuniary injury or loss does not prevent the granting of relief by way of rescission and restitution. 3 id., p. 537, and cases cited n.10. In *Brett* v. *Cooney,* 75 Conn. 338, 53 A. 729, the plaintiffs were induced by a series of false statements to sell their property to a person who in turn conveyed to another whom the plaintiffs had previously rejected as an undesirable purchaser. The plaintiffs suffered no financial loss. However, after citing *Barnes* v. *Starr,* 64 Conn. 136, 150, 28 A. 980, which states that proof of injury is a prerequisite to recovery for fraud, the court said (p. 342): "But in measuring injury, equity does not concern itself merely with money losses. If it finds that a clear right has been invaded, and that redress can be secured by putting the parties back in their original position, it will seldom refuse its aid because the plaintiff can show no substantial damage to his pecuniary interests." See also *Morrow* v. *Ursini,* 96 Conn. 219, 221, 113 A. 388.

The plaintiff had a clear right to have his offer for the farm transmitted to Tesar. Having been invited by Jere's advertisement to bid for the property, he had a right to assume that Jere would deal honestly with him and be faithful to his principal. Instead, Jere withheld the offer, later lied to the plaintiff about it and, by using the plaintiff's willingness to accept seventeen acres, acquired the farm for himself for less than the plaintiff had offered for it. He induced the plaintiff to make an offer and then used that offer, and the plaintiff's money, to make a secret profit. By his fraudulent mis-

representations, he deprived the plaintiff of his bargain and obtained for himself some of the land which the plaintiff had offered to buy. "If one acquires property by means of a fraudulent misrepresentation of a material fact, equity will assist the defrauded person by fastening a constructive trust on the property." Bogert, 3 Trusts & Trustees, p. 20; 3 Scott, Trusts, § 462.2; Restatement, Restitution, § 133, comment a, §§ 160, 169; 4 Pomeroy, Equity Jurisprudence (5th Ed.) § 1044; *Millard* v. *Green,* 94 Conn. 597, 601, 110 A. 177; *Quinn* v. *Phipps,* 93 Fla. 805, 815, 113 So. 419; *Beatty* v. *Guggenheim Exploration Co.,* 225 N.Y. 380, 386, 122 N.E. 378; Pound, "The Progress of the Law, 1918-1919: Equity," 33 Harv. L. Rev. 420, 421. It is true that this rule is most often applied in situations where the relationship between the plaintiff and the defendant is one which equity clearly recognizes as fiduciary. But equity has carefully refrained from defining a fiduciary relationship in precise detail and in such a manner as to exclude new situations. It has left the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other. 3 Pomeroy, op. cit., § 956a; *Quinn* v. *Phipps,* supra, 809; *Federman* v. *Stanwyck,* 63 Ohio L. Abs. 178, 181, 108 N.E.2d 339; see *Zichlin* v. *Dill,* 157 Fla. 96, 98, 25 So. 2d 4; *Hughes* v. *Lockington,* 221 Ill. 571, 77 N.E. 1105; *M. S. Kice & Co.* v. *Porter,* 21 Ky. L. Rep. 871, 872, 53 S.W. 285; *Hokanson* v. *Oatman,* 165 Mich. 512, 517, 131 N.W. 111; *Collins* v. *Philadelphia Oil Co.,* 97 W. Va. 464, 469, 125 S.E. 223.

Equity will not permit these defendants to keep a benefit which came to them by reason of Jere's fraudulent conduct. It is true that Tesar has not acted to right the wrong done to him. Had he done so, it is

probable that the plaintiff could have had the farm. This should not prevent the plaintiff, in his own right, from having a remedy for the wrong done to him. The plaintiff has proffered $1000, which represents the balance of the amount of his original offer over and above the purchase price he paid for the seventeen acres. Upon the payment of this sum into court, to await further order, an order should enter directing the defendant Walter to convey the sixty-three acres to the plaintiff.

There is error, the judgment is set aside and the case is remanded to the Superior Court for proceedings in accordance with this opinion.

In this opinion WYNNE, DALY and BORDON, Js., concurred.

O'SULLIVAN, J. (dissenting). The case suggests two possible theories for claiming actionable fraud on the part of Jere Adametz, hereinafter called the defendant. The first is based on his failure to disclose to the plaintiff that he had bought the Tesar farm, and the second on certain fraudulent representations made by him to the plaintiff. In other words, the one rests on his silence, the other on what he said. Neither theory, it seems to me, has any merit.

As indicated, the first theory is based on the fact that, while holding himself out as Tesar's agent, the defendant purchased the farm and thereafter sold to the plaintiff, through two dummies, seventeen of the eighty acres without revealing to the plaintiff the true nature of the entire transaction and the furtive steps which he, the defendant, had taken in acquiring the land for his son. Our law is clear that, under the circumstances found by the court to have prevailed, no duty was imposed upon the defendant to refrain from buying the farm himself or

to disclose that he had done so, as long as he was not acting at the time as agent for, or did not occupy a confidential relationship towards, the plaintiff. *Kurtz* v. *Farrington,* 104 Conn. 257, 265, 132 A. 540. Since the plaintiff concedes that the defendant was not his agent and since the facts do not admit of the existence of any confidential relationship between the parties, neither the defendant's conduct nor his silence about it presents an instance of actionable fraud.

The second theory is grounded on certain representations, fraudulently made by the defendant, to the effect that he had submitted to Tesar the plaintiff's offer to pay $7000 for the entire farm and that Tesar, while rejecting that offer, had authorized the defendant to sell to the plaintiff for $6000 the seventeen acres upon which stood the house and the other buildings. To recover on the basis of these obviously false representations, the plaintiff had to establish (1) that they were made as statements of fact, (2) that they were untrue and known by the defendant to be untrue, (3) that they were made for the purpose of inducing the plaintiff to act upon them, (4) that the plaintiff was in fact induced to act upon them, and (5) that in so acting he was legally injured. *Helming* v. *Kashak,* 122 Conn. 641, 642, 191 A. 525; *Macri* v. *Torello,* 105 Conn. 631, 633, 136 A. 479. All the foregoing essentials must be proven, and the absence of any one of them is fatal to recovery. *Bradley* v. *Oviatt,* 86 Conn. 63, 67, 84 A. 321.

It is to be noted that the plaintiff, as a result of the representations, took no positive act respecting the remaining sixty-three acres. It is, of course, true that fraudulent representations may be actionable even in the absence of a positive act, since fraud inducing inaction can be as culpable as fraud which

prompts action. *Kordis* v. *Auto Owners Ins. Co.,* 311 Mich. 247, 251, 18 N.W.2d 811; *Jefferson Standard Life Ins. Co.* v. *Hedrick,* 181 Va. 824, 833, 27 S.E.2d 198. Thus, recovery was permitted where the representations caused the plaintiff to refrain from perfecting an inchoate lien,[1] or from rescinding a contract,[2] or from selling his property,[3] or from putting his merchandise on the market.[4] Cases such as those cited, however, give no comfort to the plaintiff, since his failure to act did not affect any property interest owned by him. The law does not appear to subject a defendant to legal culpability for fraudulent representations in those instances where the person, induced to inaction, sustains no damage to his property interests or rights. Such instances would be those of injuria absque damno. See *Austin* v. *Barrows,* 41 Conn. 287, 297. They would be fraud without damage. *Sherwood* v. *Salmon,* 5 Day 439, 445.

But even if the law were otherwise, the plaintiff would not be advantaged. Because of the absence of an appendix, the finding cannot be corrected. Practice Book § 447. Since the finding does not disclose that the sixty-three acres are worth over $1000, the plaintiff has failed to establish any pecuniary loss whatsoever.

For the reasons stated above, I must disagree with my colleagues.

---

[1] *Alexander* v. *Church,* 53 Conn. 561, 563, 4 A. 103.

[2] *Bowen* v. *Carter,* 124 Mass. 426, 430; *New York Land Improvement Co.* v. *Chapman,* 118 N.Y. 288, 295, 23 N.E. 187.

[3] *Fottler* v. *Moseley,* 179 Mass. 295, 299, 60 N.E. 788; *Continental Ins. Co.* v. *Mercadante,* 222 App. Div. 181, 183, 225 N.Y.S. 488.

[4] *Butler* v. *Watkins,* 80 U.S. (13 Wall.) 456, 462, 20 L. Ed. 629.